UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
LAQUANA CAMPOS, on behalf of herself and her
minor child, K.C.; TOSHA ADAMS; NORMAN
MARSH; and BETTI RODNYANSKAYA, individually
and on behalf of all persons similarly situated,

                Plaintiffs,                    **No. 21 Civ. 5143 (RPK)(VMS)**

        -against-

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                Defendant.
--------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
CERTIFICATION OF SETTLEMENT CLASS AND
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 3

I.      ALLEGATIONS IN THE COMPLAINT ..................................................... 3

        A.      Background on the SSI Program.................................................... 3

        B.      Plaintiffs' Allegations Regarding SSA's Response to the COVID-19
                Pandemic and Issuance of the IFR .............................................. 4

        C.      The Complaint Alleged That the IFR's Limitations Were Arbitrary and
                Capricious ................................................................................. 6

        D.      The Complaint Alleged That SSA's Implementation of the IFR Was Flawed
                .................................................................................................. 6

        E.      SSA's Position ........................................................................... 7

        F.      Plaintiffs' Allegations Regarding the Named Plaintiffs ................. 8

II.     THIS LITIGATION .................................................................................. 8

III.    SETTLEMENT NEGOTIATIONS ............................................................ 9

IV.     SUMMARY OF THE SETTLEMENT TERMS ........................................ 10

        A.      Waivers of March-September 2020 Manually Assessed SSI Overpayments
                and Issuance of Underpayments, Including Refunds where Applicable,
                without Individuals Having to Take Any Action.............................. 11

        B.      Notice and Guidance for all other March 2020-April 2023 Overpayments ........ 12

        C.      Preservation of Class Members' Rights with Respect To Their Own SSI
                Benefits ..................................................................................... 14

        D.      Attorneys' Fees and Costs .......................................................... 14

ARGUMENT ...................................................................................................... 14

V.      THIS COURT SHOULD APPROVE THE PARTIES' SETTLEMENT ....................... 15

        A.      The Settlement Is Fair, Reasonable, and Adequate ....................... 16

i

1.   Rule 23(e)(2)(A): Named Plaintiffs and Class Counsel Have Adequately Represented the Class ............................................ 16

2.   Rule 23(e)(2)(B): The Settlement Proposal Was Negotiated at Arm's Length ............................................................................ 17

3.   Rule 23(e)(2)(C): The Relief Provided for the Class Is Adequate ........... 18

    a.   Rule 23(e)(2)(C)(i): Costs, Risks, and Delay of Trial and Appeal ..................................................................................... 18

    b.   Rule 23(e)(2)(C)(ii): Effectiveness of Proposed Method of Distributing Relief to the Class ...................................................... 24

    c.   Rule 23(e)(2)(C)(iii): Attorneys' Fees ........................................... 25

    d.   Rule 23(e)(2)(C)(iv): Agreements Made in Connection with Proposal ............................................................................................ 25

4.   Rule 23(e)(2)(D): The Proposal Treats Class Members Equitably Relative to Each Other ........................................................................... 25

5.   Additional *Grinnell* Factors ................................................................. 26

B.   Approval Without Class Notice is Appropriate, Even Necessary ....................... 27

1.   Class Members with March-September 2020 Manual SSI Overpayments Receive Complete Relief Under the Settlement as to those Overpayments ................................................................................ 29

    1.   The Primary Substantive Relief Provided to All Other Class Members Is Notice and So Pre-Approval Notice Would Be Confusing and Duplicative Here .................................................... 30

    2.   The Settlement Would Not Waive Any Class Member's Rights Relating to Their Own SSI Benefits .................................. 31

    3.   The Complaint Seeks Only Injunctive and Declaratory Relief ............................................................................................... 32

    4.   There Has Been No Collusion Between the Parties ..................... 33

    5.   Pre-Approval Notice Would Delay Critical Relief Under the Settlement ............................................................................... 35

    6.   Two Rounds of Notice Would Be Prohibitively Expensive and Risk Eviscerating the Settlement Agreement ....................... 36

VI.    THE COURT SHOULD GRANT CLASS CERTIFICATION FOR SETTLEMENT
       PURPOSES ................................................................................................... 37

       A.    Courts Routinely Certify Classes in Similar Cases ................................. 38

       B.    The Settlement Class Satisfies the Requirements of Rule 23(a) ............ 38

             1.    The Class Is So Numerous That Joinder of All Class Members Is
                   Impracticable .................................................................................. 38

             2.    The Settlement Class Members Share Common Issues of Law and
                   Fact .................................................................................................. 39

             3.    Named Plaintiffs' Claims Are Typical of the Settlement Class. ............. 39

             4.    Named Plaintiffs and Their Counsel Adequately Represent the
                   Settlement Class ............................................................................ 41

             5.    The Settlement Class Satisfies the Requirements of Rule 23(b)(2) .......... 42

VII.   THE STIPULATED ATTORNEYS' FEES AND COSTS AWARD IS REASONABLE
       AND SHOULD BE APPROVED ................................................................... 43

CONCLUSION ............................................................................................................ 45

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderberg v. Masonite Corp.*,
  176 F.R.D. 682 (N.D. Ga. 1997) ..................................................................29, 34

*In re AOL Time Warner, Inc.*,
  No. 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...............................27

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................23

*Alexander A. ex rel. Barr v. Novello*,
  210 F.R.D. 27 (E.D.N.Y. 2002) .......................................................................39

*Baumgarten v. CleanWell LLC*,
  No. 16-CV-1780 (SMG), 2017 WL 11648985 (E.D.N.Y. Aug. 21, 2017) ...................*passim*

*Berkley v. United States*,
  59 Fed. Cl. 675 (2004) ..................................................................................22

*Berse v. Berman*,
  60 F.R.D. 414 (S.D.N.Y. 1973) .......................................................................29

*Catanzano v. Dowling*,
  847 F. Supp. 1070 (W.D.N.Y. 1994) .................................................................38

*Charron v. Pinnacle Grp. N.Y. LLC*,
  874 F. Supp. 2d 179 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731
  F.3d 241 (2d Cir. 2013) .................................................................................20

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.
  Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) .............................................*passim*

*Clark v. Astrue*,
  274 F.R.D. 462 (S.D.N.Y. 2011) .....................................................................43

*Clark v. Ecolab, Inc.*,
  No. 07 Civ. 8623, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ..........................15

*Cortigiano v. Oceanview Manor Home for Adults*,
  227 F.R.D. 194 (E.D.N.Y. 2005) .....................................................................40

*Cruz v. Zucker*,
　195 F. Supp. 3d 554 (S.D.N.Y. 2016), *modified on other grounds on
　reconsideration by* 218 F. Supp. 3d 246 (S.D.N.Y. 2016) ....................................................40

*D'Amato v. Deutsche Bank*,
　236 F.3d 78 (2d Cir. 2001)....................................................................................15, 17, 18

*Davis v. City of New York*,
　296 F.R.D. 158 (S.D.N.Y. 2013) ........................................................................................39

*Denney v. Deutsche Bank AG*,
　443 F.3d 253 (2d Cir. 2006)................................................................................................37

*Doe by Doe v. Perales*,
　782 F. Supp. 201 (W.D.N.Y. 1991) ............................................................................ *passim*

*Espinoza v. 953 Assocs. LLC*,
　280 F.R.D. 113 (S.D.N.Y. 2011) ........................................................................................38

*Fero v. Excellus Health Plan, Inc.*,
　No. 6:15-CV-06569 EAW, 2022 WL 1292133 (W.D.N.Y. Apr. 29, 2022)..........................45

*Frank v. Eastman Kodak Co.*,
　228 F.R.D. 174 (W.D.N.Y. 2005) .......................................................................................23

*Furlong v. United States*,
　132 Fed. Cl. 630 (2017) ......................................................................................................22

*Garland v. Cohen & Krassner*,
　2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011).....................................................................21

*Glidden v. Chromalloy American Corp.*,
　808 F.2d 621 (7th Cir. 1986) ................................................................................29, 31, 36

*Goldberger v. Integrated Res., Inc.*,
　209 F.3d 43 (2d Cir. 2000)..................................................................................................44

*Gomez-Beleno v. Holder*,
　644 F.3d 139 (2d Cir. 2011)................................................................................................43

*Green v. Am. Exp. Co.*,
　200 F.R.D. 211 (S.D.N.Y. 2001) ................................................................................ *passim*

*In re GSE Bonds Antitrust Litig.*,
　414 F. Supp. 3d 686 (S.D.N.Y. 2019).................................................................................18

*Guadagna v. Zucker*,
    332 F.R.D. 86 (E.D.N.Y. 2019) ...........................................................39

*Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*,
    201 F.R.D. 326 (S.D.N.Y. 2001) .........................................................40

*Hadel v. Gaucho, LLC*,
    No. 15 Civ. 3706, 2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) ...........................15

*Hilton v. Wright*,
    235 F.R.D. 40 (N.D.N.Y. 2006)............................................................41

*Hyland v. Navient Corp.*,
    48 F.4th 110 (2d Cir. 2022) ..............................................................16

*J.S. v. Attica Cent. Sch.*,
    No. 00–CV–513S, 2012 WL 3062804 (W.D.N.Y. July 26, 2012)................................*passim*

*Jaen v. New York Tel. Co.*,
    81 F.R.D. 696 (S.D.N.Y.1979) ............................................................29

*Jermyn v. Best Buy Stores, L.P.*,
    No. 08 CIV. 214 CM, 2012 WL 2505644 (S.D.N.Y. June 27, 2012) ...........................*passim*

*Larkin General Hospital, Ltd. V. American Tel. & Tel. Co.*,
    93 F.R.D. 497 (E.D. Pa. 1982)............................................................29

*In re LIBOR-Based Fin Instruments Antitrust Litig.*,
    327 F.R.D. 483 (S.D.N.Y. 2018) .........................................................16

*Ligon v. City of New York*,
    288 F.R.D. 72 (S.D.N.Y. 2013) ..........................................................39

*Lovely H. v. Eggleston*,
    235 F.R.D. 248 (S.D.N.Y 2006) .......................................................41, 43

*M.G. v. N.Y.C. Dep't of Educ.*,
    162 F. Supp. 3d 216 (S.D.N.Y. 2016).....................................................39

*M.K.B. v. Eggleston*,
    445 F. Supp. 2d 400 (S.D.N.Y. 2006).....................................................43

*Magana v. Platzer Shipyard, Inc.*,
    74 F.R.D. 61 (S.D. Tex. 1977)...........................................................29

*Marisol A. v. Giuliana*,
    126 F.3d 372 ...........................................................................39

vi

*Mayer v. Wing,*
   922 F. Supp. 902 (S.D.N.Y. 1996) ...............................................................38, 43

*Meredith Corp. v. SESAC, LLC,*
   87 F. Supp. 3d 650 (S.D.N.Y. 2015)....................................................................44

*In re Namenda Direct Purchaser Antitrust Litig.,*
   462 F. Supp. 3d 307 (S.D.N.Y. 2020)..................................................................16

*In re Nazi Era Cases Against German Defendants Litig.,*
   198 F.R.D. ......................................................................................................34, 35

*In re Nazi Era Cases Against German Defendants Litig.,*
   198 F.R.D. 429 (D.N.J. 2000)..................................................................... *passim*

*In re PaineWebber Ltd. P'ships Litig.,*
   171 F.R.D. 104 (S.D.N.Y. 1997) .........................................................................20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
   330 F.R.D. 11 (E.D.N.Y. 2019) ..........................................................................37

*Perez v. Westchester Cty. Dep't of Corr.,*
   587 F.3d 143 (2d Cir. 2009)................................................................................43

*Plaskow v. Peabody Intern. Corp.,*
   95 F.R.D. 297 (S.D.N.Y. 1982) ...............................................................29, 30, 34

*Quero v. DeVos,*
   No. 18 Civ. 9509 (GBD) (S.D.N.Y.), ECF No. 45 ...................................29, 31, 33

*Raniere v. Citigroup Inc.,*
   310 F.R.D. 211 (S.D.N.Y. 2015) .........................................................................45

*Reynolds v. Giuliani,*
   118 F. Supp. 2d 352 (S.D.N.Y. 2000)............................................................40, 41

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993)............................................................................39, 40

*Robinson v. First Nat. City Bank,*
   482 F. Supp. 92 (S.D.N.Y. 1979) ........................................................................29

*Salazar v. King,*
   No. 14 Civ. 1230 (RWS) (S.D.N.Y.), ECF No. 72.................................... 29, 31, 33

*Sand v. Greenberg,*
   No. 08 Civ. 7840, 2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011) .........................26

*Selby v. Principal Mut. Life Ins. Co.*,
   No. 98 CIV. 5283(RLC), 2003 WL 22772330 (S.D.N.Y. Nov. 21, 2003) .................... *passim*

*Sheinberg v. Fluor Corp.*,
   91 F.R.D. 74 (S.D.N.Y. 1981) ...................................................................................29, 32, 36

*Shelton v. Pargo*,
   582 F.2d 1298 (4th Cir. 1978) ...................................................................................................29

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ....................................................................................................45

*Stinson v. City of New York*,
   282 F.R.D. 360 (S.D.N.Y. 2012) ..............................................................................................39

*Sykes v. Mel S. Harris & Assocs. LLC*,
   2016 WL 3030156 (S.D.N.Y. May 24, 2016) .........................................................................20

*Town of Greece, N.Y. v. Eastman Kodak Co.*,
   No. 06 Civ. 6570L(F), 2007 WL 2126277 .......................................................................29, 32

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................................................39

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ...............................................................................................15, 28

*Waterkeeper All., Inc. v. U.S. E.P.A.*,
   399 F.3d 486 (2d Cir. 2005) .....................................................................................................21

*White v. Mathews*,
   559 F.2d 852 (2d Cir. 1977) .....................................................................................................38

**Statutes**

28 U.S.C. §§ 2412(a), (d) ...............................................................................................................46

42 U.S.C. § 1382 ...............................................................................................................................3

EAJA ..........................................................................................................................................43, 44

Equal Access to Justice Act ...........................................................................................................44

Equal Access to Justice Act, 28 U.S.C. § 2412 ............................................................................14

Equal Access to Justice Act, 28 U.S.C. § 2412(d) ..................................................................25, 43

## Other Authorities

20 C.F.R. § 416.550 ...................................................................................................4

85 Fed. Reg. 52,909 ...................................................................................................5

Fed. R. Civ. P. 23(a)(1) ............................................................................................38

Fed. R. Civ. P. 23(a)(4) .......................................................................................41, 42

Fed. R. Civ. P. 23(e)(2) .......................................................................................15, 16

Federal Rule of Civil Procedure 23(e) ...............................................2, 15, 28, 36

Federal Rules of Civil Procedure 23(a) and 23(b)(2) .........................................2

Federal Rules of Civil Procedure Rule 23(a) and Rule 23(b)(2) .................38

Federal Rules of Civil Procedure Rule 23(b)(2) ................................... *passim*

Plaintiffs' Memorandum of Law in Support of Plaintiffs' Preliminary Injunction
    Motion, ECF No. 24 ......................................................................................21, 27

Rule 23 ...............................................................................................28, 37, 44

Rule 23(a) .................................................................................................38

Rule 23(a)(2) ...........................................................................................39

Rule 23(a) and (b) ...................................................................................37

Rule 23(e)(2)(A) .......................................................................................17

Rule 23(e)(2)(A-B) ...................................................................................17

Rule 23(e)(2)(B) ...................................................................................17, 18

Rule 23(e)(2)(C) .......................................................................................18

Rule 23(e)(2)(C)(i) ...................................................................................18

Rule 23(e)(2)(C)(ii) ..................................................................................24

Rule 23(e)(2)(C)(iii) .................................................................................25

Rule 23(e)(2)(C)(iv) .................................................................................25

Rule 23(e)(2)(D) .......................................................................................26

Rule 23(e)'s.........................................................................................................................27

SSI Federal Payment Amounts, *available at*
https://www.ssa.gov/oact/cola/SSIamts.html (monthly maximum SSI payment
for an individual in 2020 was $783) .......................................................................11

**PRELIMINARY STATEMENT**

Plaintiffs LaQuana Campos (on behalf of herself and her minor child, K.C.), Tosha Adams, Norman Marsh, and Betti Rodnyanskaya, individually and on behalf of the class of approximately 2.35 million putative class members (the "Class Members," and together, the "Class"), respectfully submit this motion to seek this Court's final approval of the Settlement Agreement that Plaintiffs have reached with Defendant Kilolo Kijakazi, in her capacity as the Acting Commissioner of the Social Security Administration ("SSA," "the Agency," or "Defendant"). If approved, this Settlement will bring critical relief to millions of current and former recipients of Supplemental Security Income ("SSI") benefits, who must have very limited income and assets, and be elderly or disabled, to qualify for the program. Defendant consents to Plaintiffs' request.[1]

Under the Settlement, which resulted from both zealous litigation and over a year of extensive arm's-length negotiations between the Parties, Defendant will "waive" a significant number of "overpayments" incurred by Class Members early in the COVID-19 Pandemic (specifically, March to September 2020)—meaning that the agency will not recover SSI benefits paid to recipients in months when SSA determined they were not eligible to receive all or some of their benefits. The Agency will effectuate these waivers without the individual Class Members being required to submit separate requests for waiver, such that, from the perspective of the Class Members, the waivers will happen without them having to take any specific actions. SSA will return any amounts previously "recouped"—that is, either previously paid back to SSA by the overpaid individual or withheld from their monthly benefits to repay the overpayment. Plaintiffs estimate that this relief will result in many millions of dollars being returned to Class Members, which will generally be accomplished either by transferring funds to their bank accounts or mailing

---

[1] Defendant's consent should not be construed as its adoption or endorsement of allegations and arguments advanced by Plaintiffs that relate to the substantive merits of this case.

a check  or, where applicable, applying the waived amounts to Class Members' other outstanding overpayments. From the perspective of a Class Member who receives a refund, this refund will also happen without them having to take any specific actions. For the remaining Class Members (who number one million or more SSI recipients), SSA will issue new administrative guidance clarifying the COVID-19-related circumstances the agency will consider when determining whether an individual was at fault in causing the overpayment upon the submission of affirmative individual waiver requests, and then issue a one-time notice explaining the Class Member's right to request such a waiver.

The Settlement satisfies all of the criteria for final approval pursuant to Federal Rule of Civil Procedure 23(e), and the Class meets all the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2). Further, under the circumstances presented in this case—including, critically, that no Class Member releases any right to request relief with respect to his or her own SSI overpayment; that the Settlement provides exceptionally valuable relief; and that the costs and delay of notice is prohibitive—approval is appropriate here without prior notice to the Class. Plaintiffs thus respectfully request that the Court, after a hearing (if appropriate):

1. Certify a settlement class, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, consisting of:

    i.  all individuals with a March-September 2020 Manual SSI Overpayment, and
    ii. all individuals with an SSI Overpayment debt incurred for any months between March 2020 and September 2020 that was identified through automated processes, and all individuals with an SSI overpayment debt incurred for any months between October 2020 and April 2023.[2]

---

[2] All capitalized terms have the same meaning as in the Stipulation of Settlement, attached as Exhibit 1 to the Declaration of Danielle Tarantolo in Support of Final Approval ("Tarantolo Decl."). Specifically, as defined in the Settlement Agreement, March-September 2020 Manual SSI Overpayments is defined as "SSI overpayment debts incurred for the period from March 1, 2020 through September 30, 2020 that were not identified through Automated Processes" and, in turn, "Automated Processes" "shall be interpreted in a manner consistent with the term 'automated processes' in the Interim Final Rule, Waiver of Recovery of Certain Overpayment Debts Accruing During the COVID-

2. Appoint the New York Legal Assistance Group, Justice in Aging, and Arnold & Porter Kaye Scholer LLP as Class Counsel and the Named Plaintiffs as Class Representatives;

3. Enter the proposed final approval order, attached as Exhibit 2 to the Declaration of Danielle Tarantolo in Support of Final Approval ("Tarantolo Decl."); and

4. Award such other and further relief as this Court deems just and proper.

Plaintiffs are filing a proposed Final Approval Order in connection with this motion. *See* Tarantolo Decl. Ex. 2.

## **BACKGROUND**

## I.     **ALLEGATIONS IN THE COMPLAINT**

### A.     **Background on the SSI Program**

The SSI program provides subsistence benefits for individuals with very low income, and who are also elderly or disabled. Compl. ¶ 24. SSI payments may only be made to recipients who meet income and resource requirements set by statute. *Id.* ¶¶ 37–38; 42 U.S.C. § 1382. Many changes in a person's circumstances can affect income, resources, or eligibility and thus can impact the amount of SSI benefits received. Compl. ¶ 40. When a recipient is found to have exceeded the allowable SSI income or resource limits for one or more prior months, SSA determines that the recipient was "overpaid" for those month(s), sends a notice of overpayment (an "Overpayment Notice"), and schedules recoupment of benefits. *Id.* ¶ 45–46 (citing 20 C.F.R. § 416.1336; 20 C.F.R.. § 416.558). To recoup funds that SSA deems have been overpaid, SSA reduces the

---

19 Pandemic Period (Fed. Reg. Vol. 85. No. 167, 52909-52915, Aug 27, 2020), including but not limited to 'automated processes such as computer interfaces with the Department of Veteran Affairs (VA) and (for dually entitled SSI recipients) Social Security benefit systems.'" In other words, a manual overpayment is an overpayment that was identified by a manual process, such as by an SSA staff member, whereas a non-manual overpayment is one that was identified through an Automated Process, such as computer matching between the Department of Veteran Affairs and SSA.

recipient's benefits by, at most, 10% each month until the full balance of the overpayment is repaid or otherwise resolved through appeal or waiver. *Id.* ¶ 49 (citing 20 C.F.R. § 416.570). SSA's decision that a recipient was overpaid can be made either manually (processed by a SSA employee) or automatically (processed through SSA's computer system, *e.g.*, data matching from other government or private agency databases). *Id.* ¶¶ 47–48.

A recipient who receives an Overpayment Notice may request a waiver—that is, a decision by SSA to waive recovery of the overpayment. *Id.* ¶ 50 (citing 20 C.F.R. § 416.550). This "standard" waiver process existed long before the pandemic and is available for all overpayments. 20 C.F.R. § 416.550.

**B.    Plaintiffs' Allegations Regarding SSA's Response to the COVID-19 Pandemic and Issuance of the IFR**

The Complaint alleged that in March 2020, in response to the unprecedented COVID-19 pandemic, SSA took numerous measures to protect the public and agency employees, including closing its field offices for most in-person service such that SSI recipients could not visit them for routine services. Compl. ¶¶ 5–6, 30, 60. The Complaint alleged that, whereas before the pandemic many SSI recipients reported changes in their circumstances by visiting their local field offices, Compl. ¶ 42, as a result of the field office closures to in-person service, some SSI recipients may have had difficulty timely reporting changes in income or assets to SSA because the option to visit a field office in person was unavailable at that time. *Id.* ¶¶ 60–68

The Complaint alleged that from March to September 2020, SSA stopped manually processing all terminations, suspensions, and overpayments. *Id.* ¶ 65. The Complaint alleged that this meant that, in some cases, SSA did not establish overpayments immediately even where the recipient had notified SSA of relevant facts. *Id.* ¶ 67. The Complaint alleged that SSA's reprioritization of certain manual workloads at the start of the pandemic "unfairly led to

4

overpayment amounts greater than they otherwise would have been during the normal course of business, had SSA timely processed the information in its possession." *Id.* ¶ 68. In September 2020, SSA resumed the workloads that it had suspended in March 2020. *Id.* ¶ 65.

On August 27, 2020, SSA issued an Interim Final Rule ("IFR") to address overpayments that SSA "did not manually process as a result of [its] cession of certain activities." 85 Fed. Reg. 52,909; Compl. ¶ 69. In the IFR's Summary, SSA explained that certain "overpayment debts . . . occurred because of the circumstances surrounding the COVID–19 national public health emergency." *Id.* (quoting IFR at 52,909). The IFR created a new and additional "simplified waiver process" (for clarity, one that was separate and apart from the standard process discussed *supra*, which was also still available to SSI recipients), referred to herein as the "streamlined waiver." *Id.* ¶ 72 (quoting IFR at 52,910). Unlike the standard waiver, however, the streamlined waiver provided that SSA would "presume overpaid individuals are without fault in having caused the qualifying overpayment debt;" would "determine that recovery of . . . qualifying overpayment debt incurred during the pandemic period would be against equity and good conscience;" and thus would "waive recovery of the portion of qualifying overpayment debt incurred during the pandemic period." *Id.* ¶ 73 (quoting IFR at 52,910). Overpayments qualified for the IFR only if: (1) the overpayment accrued between March 1, 2020, and September 30, 2020; (2) the overpayment was identified by SSA by December 31, 2020; (3) the overpayment was processed manually rather than identified through SSA's automated processes; (4) the overpayment resulted from the agency's decision to defer action and suspend certain workloads; and (5) the recipient requested a waiver of the overpayment. *Id.* ¶ 75 (citing IFR at 52,910).

### C.    The Complaint Alleged That the IFR's Limitations Were Arbitrary and Capricious

The Complaint alleged that the IFR was arbitrary and capricious in five ways. Compl. ¶ 76. First, the Complaint alleges that the IFR was limited to overpayments that SSA identified through its "manual process," but recipients had no control over whether SSA reviewed their overpayments through a manual or automated process. *Id.* ¶¶ 77–79. Second, the Complaint alleged that the IFR extended relief only to overpayments incurred during a defined "pandemic period" from March to September 2020, even though the COVID-19 pandemic did not end in September 2020 . *Id.* ¶¶ 80–84. Third, the Complaint alleged that the IFR was further limited to overpayments that SSA identified before December 31, 2020, but recipients could not necessarily control when SSA identified their overpayment.. *Id.* ¶¶ 85–88. Fourth, the Complaint alleged that the IFR did not cover overpayments caused by a recipient's inability to submit information about changed circumstances as a result of pandemic conditions, even though these were also overpayments relating to the COVID-19 pandemic. *Id.* ¶¶ 89–90. Finally, the Complaint alleged that the IFR required recipients to affirmatively request streamlined waivers rather than providing a process for an automatic waiver. *Id.* ¶¶ 91–93.

### D.    The Complaint Alleged That SSA's Implementation of the IFR Was Flawed

The Complaint further alleged that, even for individuals whose overpayments were covered by the IFR, SSA failed to properly implement the streamlined waiver process per the specifications of the IFR. ¶¶ 103–05. Additionally, the Complaint alleged that SSA's modified Overpayment Notices failed to conform to the IFR and were confusing due to the manner in which they incorporated both IFR-specific and general waiver information. *Id.* ¶¶ 121–134.[3]

---

[3] This is not an exhaustive recitation of the allegations or claims Plaintiffs presented in their Complaint, or in their Motion for Preliminary Injunction and Motion for Class Certification, or that it would have presented in any other dispositive motion.

E.    **SSA's Position**

Though SSA has yet to answer Plaintiffs' complaint due to the procedural posture of the case, it raised various defenses to Plaintiffs' allegations in its Response to Plaintiffs' Motions for Preliminary Injunction and Provisional Class Certification, which Plaintiffs voluntarily withdrew without prejudice after the Parties reached an agreement in principle with respect to a key aspect of the relief for Class. SSA argued that applying a streamlined waiver set out in the IFR to overpayments incurred from March through September 2020 that had been manually processed was not arbitrary and capricious. SSA argued that the stated purpose of the IFR was to offer relief to those who were assessed overpayments or who incurred larger overpayments due to SSA's decision to pause certain actions. SSA argued that since the pause applied to only manually processed reductions, suspensions, or terminations of SSI benefits from March through August 2020, it was entirely reasonable to provide relief to overpayments from March to September 2020 that would have been manually processed but for the pause. SSA argued that, similarly, because the stated purpose of the IFR was to account for SSA's pause on manually processed reductions, suspensions, or terminations of SSI benefits, it was reasonable that the IFR did not extend to people whose overpayments accrued because of all other pandemic-related circumstances that might have prevented them from reporting information to SSA. And, SSA argued that it was reasonable for the IFR to apply only to overpayments identified by December 31, 2020, because it provided SSA sufficient time to identify qualifying debts while permitting responsible stewardship of the Social Security programs. Further, in response to allegations of due process violations, SSA argued that Plaintiffs did not demonstrate deprivation of notice, deprivation of the opportunity to be heard, or abuse of governmental power. Additionally, in response to allegations of equal protection violations, SSA argued how each criterion of the IFR has a rational relationship to a legitimate

7

government interest.[4]

###### F.    Plaintiffs' Allegations Regarding the Named Plaintiffs

This case was brought by LaQuana Campos (on behalf of herself and her minor child, K.C.), Tosha Adams, Norman Marsh, and Betti Rodnyanskaya on behalf of themselves and a class of similarly situated SSI recipients. Compl. ¶ 1. Each Named Plaintiff relied on SSI benefits to meet their basic household needs, such as food and rent, at some point during the period at issue in the Complaint. *Id.* ¶¶ 136, 190, 227, 258. Each Named Plaintiff was assessed one or more overpayments for the period covered by the IFR, between March and September 2020. *Id.* ¶¶ 148, 198, 231, 274. Each Named Plaintiff was also assessed one or more overpayments for the period between October 2020 and April 2023, the portion of the COVID-19 National Emergency to which the IFR, by its terms, did not apply—a limitation challenged by the Complaint. *Id.* ¶¶ 173, 198, 211, 231, 278. Each Named Plaintiff contacted the New York Legal Assistance Group (NYLAG) for assistance resolving their overpayments. *Id.* ¶¶ 151, 218, 240 280. Even with the assistance of their advocates, none of the Named Plaintiffs obtained the streamlined waiver. *Id.* ¶¶ 162–64, 220–21, 250, 283, 291. Accordingly, Named Plaintiffs initiated this Action.

## II.    THIS LITIGATION

On September 15, 2021, Plaintiffs filed the Complaint in this Action. ECF No. 1. Shortly thereafter, on October 26, 2021, Plaintiffs filed a Motion for a Preliminary Injunction. ECF No. 23. Defendant opposed and Plaintiffs replied. ECF Nos. 25, 29. As detailed *infra*, the Parties began settlement negotiations in earnest; these negotiations are described in detail below. The Parties agreed to delay adjudication of the Preliminary Injunction Motion to allow settlement negotiations to progress, and eventually, after the Parties reached an agreement in principle with respect to a

---

[4] This is not an exhaustive recitation of the position or defenses SSA presented in its Opposition or that it would have presented in an Answer, Motion to Dismiss, or other dispositive motion.

key aspect of the relief for Class Members with March-September 2020 Manual Overpayments, Plaintiffs voluntarily withdrew their preliminary injunction motion without prejudice. Class Counsel performed hundreds of hours of work on the litigation portion of this case, separate and apart from their extensive work on settlement. This litigation work included interviewing, collecting documents from, and providing information to Named Plaintiffs and other Class Members; filing an exceedingly detailed Complaint; and filing a robust preliminary injunction motion and reply brief. Tarantolo Decl. ¶ 20. Throughout this litigation, the Named Plaintiffs fully and openly cooperated with Class Counsel, including by attending meetings and interviews with counsel and providing records to counsel. *Id*. ¶ 16. They undertook these efforts despite having limited means and little familiarity with proceedings of this nature. *Id*.

## III.    SETTLEMENT NEGOTIATIONS

The settlement discussions in this matter, which began in January 2022, were highly contested and spanned approximately a year and half, including the Parties' attendance at numerous settlement conferences before the Court. Tarantolo Decl. ¶¶ 7–8. Specifically, the Parties first spent approximately eight months engaged in intensive, rigorous, contested discussions focusing on relief to the Class Members who were assessed an overpayment between March and September 2020 that was manually processed and that did not involve fraud, similar fault, or misuse of benefits by a representative payee. *Id.* These Class Members are, through the settlement agreement, receiving waivers without needing to separately request the waiver, or the underpayment or refunds as applicable (that is, where permitted by law, regulation, and Agency policy). *See* Settlement Agreement ¶ 2(a). From the perspective of a Class Member, this waiver and, where applicable, this refund, will happen without them having to take any action. The Parties

9

then continued intensively negotiating over the following eight months to finalize relief as to the remainder of the Class and to agree on draft settlement agreement language. Tarantolo Decl. ¶ 7.

Negotiating this Settlement required extensive work by the Parties. The Parties exchanged dozens of written drafts of settlement proposals, demands and offers, draft stipulations, draft language, and settlement-related questions and answers; the Parties expended considerable effort drafting and reviewing these exchanges. *Id.* ¶ 8. The Parties held dozens of telephone conferences to discuss contested aspects of the Settlement. *Id.* ¶ 8. Named Plaintiffs and Class Counsel also spent time reviewing the terms of the Settlement together so that Named Plaintiffs could offer their approval.

Specifically, from January 19, 2022 to October 4, 2022 the Parties extensively negotiated and reached an agreement in principle on the waiver relief to be provided to Class Members with overpayments during the March-September 2020 time period that were manually processed, excluding cases of fraud, similar fault, or misuse by a representative payee. *Id*. ¶ 7. From October 4, 2022 through June 7, 2023, the Parties subsequently (and again, extensively) negotiated the relief to the remaining class members. *Id.* By June 7, 2023, the Parties finalized a joint stipulation as to the agreed-upon relief for *all* Class members, an agreement regarding the process surrounding notice and guidance surrounding the relief, and on June 7, 2023, reached an agreement on attorneys' fees to be paid to Class Counsel by SSA. This stipulation was executed by both parties on June 23, 2023. *Id*.

## IV.    SUMMARY OF THE SETTLEMENT TERMS

Upon approval, the Settlement would resolve all claims against Defendant asserted by all Class Members by providing critical relief to the over two million Class Members, as follows:

10

A.    **Waivers of March-September 2020 Manually Assessed SSI Overpayments and Issuance of Underpayments, Including Refunds where Applicable, without Individuals Having to Take Any Action**

Defendant has agreed to waive all SSI overpayments incurred from March through September 2020 that have been or will be manually processed, without requiring any individual to submit any separate request for waiver.[5] Settlement Agreement ¶ 2(a). Defendant has agreed to provide such waivers by no later than eighteen months after the Final Settlement Date and issue underpayments, including refunds where applicable, approximately one month thereafter.[6] *Id.* ¶ 2(c). The value of a waiver to any particular eligible Class Member will vary according to the relevant circumstances and the size of their overpayment, but could involve waiving an overpayment in the amount of anywhere from part of one month's SSI overpayment to the full amount of their monthly SSI payments over the seven-month period from March through September 2020 (which could amount to up to $5,481 for an individual).[7] Similarly, for those eligible Class Members from whom the Agency has already recouped all or part of an overpayment that is waived, the amount to be returned to them via underpayment (including by refund) will vary based on their particular circumstances and the amount recouped. *Id.* ¶ 2(b).

Additionally, Defendant has agreed to issue "underpayments" (including, where applicable, refunds) for amounts that Class Members have already repaid pursuant to

---

[5] This excludes overpayments resulting from fraud or similar fault, which were also excluded from the Class's claims. It also excludes situations where the overpayment determination has been reversed, or overpayments that have already been waived, because those overpayments do not necessitate any further action. Throughout this motion, anytime we describe waivers being provided for March through September manual SSI overpayments, this should always be read to exclude cases of fraud, similar fault, or misuse of benefits by a representative payee, consistent with the terms of the Settlement Agreement. *See* Settlement Agreement ¶ 2(a).

[6] To the extent that assistance from SSA's Operations component will be needed to effectuate waivers and/or refunds, the Agency will provide such waivers and/or refunds as soon as is practicable. *See* Settlement Agreement ¶ 2(c).

[7] *See* SSI Federal Payment Amounts, *available at* https://www.ssa.gov/oact/cola/SSIamts.html (monthly maximum SSI payment for an individual in 2020 was $783).

11

overpayments that are waived under the Settlement.[8] *Id.* Where applicable, the Agency will provide any refund pursuant to a waiver under the Settlement via its typical process of making a payment to the financial institution in which the claimant currently receives their SSI benefits. *Id.* The effect of this relief is that millions of dollars will be credited back to Class Members—many of whom have very limited income and assets–and, where applicable, deposited into Class Members' bank accounts by the Agency, with no action required by the Class Members to effectuate relief. From the perspective of Class Members who receive refunds, these refunds will happen without them having to take any actions; rather, they will be paid directly via check  or direct deposit.

Defendant will send a one-time notice to Class Members who are eligible for waiver that will inform them that eligible overpayments are being waived.[9] *Id.* ¶ 2(e).

### B.    Notice and Guidance for all other March 2020-April 2023 Overpayments

All other Class Members—that is, all Class Members who were assessed an SSI overpayment incurred between October 2020 and April 2023 (the end of the COVID-19 national emergency), and Class Members who were assessed an SSI overpayment incurred from March 2020 to September 2020 and identified through automated processes (as opposed to manually processed overpayments), *supra* p. 11—will receive relief in the form of new administrative guidance followed by a notice to be sent to each Class Member. *See* Settlement Agreement ¶¶ 3(a), 3(b).

---

[8] In some situations, a Class Member may not get a refund, but will still be credited for such payments, such as when the underpayment is applied against a different outstanding overpayment to reduce that overpayment balance. *See* Settlement Agreement ¶ 2(b).

[9] This notice, at the Agency's election, might be the same as that provided to other Class Members, discussed in Argument Section I.B.7, *infra*.

12

First, Defendant has agreed to issue internal guidance by eight months after the Parties executed the settlement agreement (*i.e.*, February 23, 2024) or three months after the Court's Final Approval or one week after the Final Settlement Date (whichever is latest of these dates). *Id*. ¶ 3(b). This guidance will remind SSA's technicians how to adjudicate waiver requests for SSI overpayments since March 2020, and direct them to consider specific COVID-19-related circumstances when determining whether an individual was at fault in causing the overpayment as part of the process of adjudicating waiver requests. *Id.* (To receive waiver, an individual must, among other things, be without fault in causing the overpayment.) Defendant will issue guidance instructing technicians to consider that an individual may not be at fault in causing an overpayment if certain COVID-19 related factors prevented the individual from complying with SSI reporting requirements, such as: (1) COVID-19 related failed attempts to contact the Agency, including inability to visit a field office, inability to access mail services, and inability to access transportation; (2) government-imposed COVID-19 travel restrictions; (3) overpaid individual's COVID-19 related serious illness; (4) child- or family-care changes due to COVID-19 stay-at-home orders or school-at-home requirements, (5) COVID-19 related death or serious illness of the overpaid person's representative payee; and (6) COVID-19 related death or serious illness in the overpaid individual's immediate family. *Id*.

The Agency will issue a second, revised guidance shortly before the notices are sent. This revised guidance will also include information on how to process inquiries about the notice and reminders to assess underpayment eligibility, and will remain in effect for at least two years after the notices are sent. Defendant will also provide messaging and training related to this internal guidance in Defendant's field offices, regional offices, and hearing offices within a reasonable amount of time prior to issuance of the notices. *Id*.

13

By approximately sixteen months after the Final Settlement Date, SSA will send a notice to each Class Member in this group, advising them about the new COVID-19-related administrative guidance and providing directions on how to seek a waiver. *Id.* ¶ 3(d).

### C. Preservation of Class Members' Rights with Respect To Their Own SSI Benefits

Nothing in the Settlement Agreement will limit, restrict, or release *any* Class Member's right to request *any* individual relief in connection with *any* overpayment (or other issue regarding their own SSI benefits), including, but not limited to, relief sought through a request for waiver or reconsideration or any administrative or judicial appeal thereof. *Id.* ¶ 6(b). To the contrary, the Settlement Agreement expressly retains all Class Members' rights to raise such issues. The release in the Settlement affects *only* Class Members' rights to seek systemic relief arising from the issues alleged in the Complaint. *Id.* ¶ 6(a).

### D. Attorneys' Fees and Costs

Defendant has agreed to the amount of $268,000.00 as attorneys' fees and $2,702.00 as costs to be awarded to Class Counsel, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. *Id.* ¶ 12. This reflects only a small fraction of fee that would result from the total hours that Class Counsel spent on this matter. For example, Class Counsel initially requested fees for only two attorneys from each organization for each stage of the case, and excluded all other hours. (Throughout the life of this case, dozens of attorneys and non-attorneys spent hundreds of hours performing zealous work on behalf of the Class.[10]). *See* Tarantolo Decl. ¶¶ 27–28.

### **ARGUMENT**

---

[10] This included speaking with clients and other advocates, developing legal claims, conducting extensive research to support the Class Members' claims, drafting an extensive highly-detailed complaint, filing a robust motion for a preliminary injunction and preliminary class certification (and then a reply to the Agency's opposition motion). Additionally, with the assistance of other attorneys and non-attorneys, Class Counsel participated in the extensive settlement process described above, all while filing numerous status reports.

## V.    THIS COURT SHOULD APPROVE THE PARTIES' SETTLEMENT

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted). Speedy settlement "allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Hadel v. Gaucho, LLC*, No. 15 Civ. 3706, 2016 WL 1060324, at *2 (S.D.N.Y. Mar. 14, 2016).

Under Federal Rule of Civil Procedure 23(e), this Court must approve the Settlement before it can become binding. Courts may approve class action settlements if they find, in their discretion, that a settlement is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart*, 396 F.3d at 116; *see also* Fed. R. Civ. P. 23(e)(2). "The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85–87 (2d Cir. 2001). The Court should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Clark v. Ecolab, Inc.*, No. 07 Civ. 8623, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.1988) and *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D.Mo.2002)).

Specifically, to determine a settlement's fairness, a Court must consider, under Rule 23(e)(2), whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate; and (d) the proposal treats class members equitably relative to each other. The Second Circuit has set forth the nine "*Grinnell*" factors courts use in conducting this analysis: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the

settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*").[11]

As detailed in Argument Section I.B, *infra*, the Parties seek final approval of this Settlement without pre-approval notice to the Class. While this deviates from the standard, two-step class action settlement procedure, "[c]ourts within the Second Circuit have been relatively liberal in approving settlements" in this manner, taking a "functional approach" to the question of whether notice to the Class is required. *J.S. v. Attica Cent. Sch.*, No. 00–CV–513S, 2012 WL 3062804, at *3 (W.D.N.Y. July 26, 2012). *See* Argument Section I.B., *infra* (identifying seven circumstances in which Courts have found that forgoing pre-approval notice is appropriate and detailing the application of these factors to this case). Here, forgoing pre-approval notice is appropriate.

### A.    The Settlement Is Fair, Reasonable, and Adequate

#### 1.    Rule 23(e)(2)(A): Named Plaintiffs and Class Counsel Have Adequately Represented the Class

---

[11] *See also Hyland v. Navient Corp.*, 48 F.4th 110, 121 (2d Cir. 2022) ("To evaluate the fairness, reasonableness, and adequacy of a class settlement, courts employ the nine factors set out in *City of Detroit v. Grinnell Corp.*"); *In re LIBOR-Based Fin Instruments Antitrust Litig.*, 327 F.R.D. 483, 493 (S.D.N.Y. 2018) (discussing use of the *Grinnell* factors in the Second Circuit); *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) (explaining that after the 2018 amendments to Fed R. Civ. P. 23(e), "[t]he factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors and 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision to whether to approve the proposal.'" (citation omitted)).

Rule 23(e)(2)(A) directs the Court to consider whether "the class representatives and class counsel have adequately represented the class." This is a "procedural" inquiry, and "the focus . . . is on the actual performance of counsel acting on behalf of the class." Advisory Committee Note, Rule 23(e)(2)(A-B). Here, the Named Plaintiffs and Class Counsel have more than adequately represented the Class throughout the litigation, weighing in favor of settlement.

Class Counsel performed over a thousand hours of work on this litigation, including: interviewing, collecting documents from, and providing information to Named Plaintiffs and other Class Members; filing an exceedingly detailed Complaint; filing a preliminary injunction motion and reply brief; and painstakingly negotiating this Settlement Agreement over the course of more than a year. Tarantolo Decl. ¶ 20.

The Named Plaintiffs have adequately represented the Class through full and open cooperation with Class Counsel, including by attending meetings and interviews with counsel, providing records to counsel, and reviewing and approving the substance of the Settlement. *Id*. ¶ 16. They undertook these efforts despite having limited means and little familiarity with proceedings of this nature. *Id*.

## 2. Rule 23(e)(2)(B): The Settlement Proposal Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires that "the proposal [have been] negotiated at arm's length." The procedural fairness of a settlement is based on the negotiating process that led to it. *D'Amato*, 236 F.3d at 85. To find a settlement process fair, the court must "ensure that the settlement resulted from arm's-length negotiations and that plaintiff['s] counsel . . . possessed the experience and ability . . . necessary to effective representation of the class's interests." *Id*. (internal quotation marks omitted).

The settlement discussions in this matter, which began in January 2022, were highly

contested and spanned approximately a year and half. As described *supra*, these negotiations entailed the Parties' attendance at numerous settlement conferences before the Court; the exchange of dozens of drafts of proposals, stipulations, settlement language, and related questions; and over a dozen telephone conferences. Tarantolo Decl. ¶¶ 7–8. Given the Parties' extensive settlement efforts, Rule 23(e)(2)(B) is satisfied.

### 3.    Rule 23(e)(2)(C): The Relief Provided for the Class Is Adequate

#### a.    Rule 23(e)(2)(C)(i): Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) asks the Court to consider the "costs, risks, and delay of trial and appeal," and overlaps with a number of *Grinnell* factors, which help guide the Court's application of the Rule. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). Specifically, the Court's inquiry here should be guided by the following *Grinnell* factors: the complexity, expense, and likely duration of the litigation (Factor 1); the risks of establishing liability (Factor 4); the risks of establishing entitlement to relief (Factor 5); the risks of maintaining the class action through the trial (Factor 6); the ability of the defendants to withstand a greater judgment (Factor 7); the range of reasonableness of the settlement in light of the best possible recovery (Factor 8); and the range of reasonableness of the settlement as compared to a possible recovery in light of all the attendant risks of litigation (Factor 9). *Id.* at 693–96. As explained below, proceeding to trial in this action would have involved extensive time and resources, and significant litigation risk. Crucially, the time it would have taken to litigate this action to completion would render a significant amount of the relief sought in the complaint far less useful because it would relate to overpayments that would, at that point, have been assessed many years earlier. By settling now, Class Members will receive tangible benefits on a timeframe that is much quicker than would result even from fully successful litigation.

18

**Complexity, expense and likely duration of the litigation (Factor 1):** This case is complex, involving administrative law and constitutional claims on behalf of over two million Class Members. Continuing litigation would likely require re-briefing and adjudication of Plaintiffs' (now-withdrawn) preliminary injunction motion and/or a motion to dismiss, and would certainly require document discovery, depositions, and then class certification and summary judgment briefing. Tarantolo Decl. ¶ 12. This process would take a few years a minimum and, potentially, the better part of a decade. *Id.*

The delay in continuing to litigate would have substantial negative ramifications for the Class, since, absent a preliminary injunction ordering otherwise, some Class Members would be assessed overpayments in the future for the period covered by this Settlement,[12] and also be subject to recoupment on those overpayments on an ongoing basis. *Id.* ¶ 13. In real-world terms, such recoupment would mean that many Class Members, including current SSI recipients who continue to rely on SSI as subsistence benefits to pay their basic living expenses, could be subject to a 10% reduction in their monthly benefits every month while this litigation continues. *Id.* With the Settlement, for many Class Members, not only will that recoupment be stopped and their full monthly SSI benefit payment restored, those Class Members may also receive a refund of funds previously recouped. *Id.* Ex. 1.

"Settlement is favored" where, as here, it "results in substantial and tangible present recovery, without the attendant risk and delay of trial." *Sykes v. Mel S. Harris & Assocs. LLC* ("*Sykes III*"), 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016) (internal quotation marks

---

[12] SSA periodically completes a redetermination of all SSI recipients' accounts, including a retrospective review to determine eligibility for SSI benefits received in the past 24 months. POMS SI 02305.034. Accordingly, redeterminations as far in the future as March 2025 may result in overpayments dating back to one or more months addressed under this settlement, since March 2025 is 24 months after the end of the COVID-19 national emergency in April 2023.

omitted). This factor thus weighs in favor of the proposed settlement. *See, e.g.*, *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 196–97 (S.D.N.Y. 2012) (granting final approval of settlement class action where "[t]he path from this stage of the litigation to a final judgment . . . would be long, complicated, and expensive . . . [n]otwithstanding the strength of the evidence Plaintiffs elicited during . . . investigation and discovery"), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

**Risks of establishing liability and entitlement to relief (Factors 4 and 5):** Although Class Counsel believe that the Class claims' have merit and could prevail, the Agency presented defenses in its Opposition to Plaintiffs' motion for preliminary injunction and would present additional arguments through dispositive motions and through trial if the litigation were to continue. Moreover, "[l]itigation inherently involves risks," and the main purpose of settlement "is to avoid a trial on the merits because of the uncertainty of the outcome" and the costs of delay. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (internal quotation marks omitted).

This is inherent risk in establishing Defendant's liability; Plaintiffs' claims are not straightforward. Tarantolo Decl. ¶ 11. Plaintiffs' primary claim is that the IFR is arbitrary, capricious, or an abuse of discretion. *See also* Compl. ¶¶ 311–13. Under that claim, the key question for a reviewing Court is "whether the agency has . . . 'articulate[d] a satisfactory explanation for its action,'" and the court will find the agency action arbitrary and capricious where "'there has been a clear error of judgment.'" *Waterkeeper All., Inc. v. U.S. E.P.A.*, 399 F.3d 486, 498 (2d Cir. 2005) (quoting *Motor Vehicle Mfrs.' Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983)). While, as detailed in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Preliminary Injunction Motion, ECF No. 24 at 9–12, Plaintiffs believe they

have a meritorious argument that the IFR represents a clear error of judgment, the Agency's Opposition papers strongly disagreed and presented the Agency's explanation for the IFR's eligibility criteria, and the Agency would be likely to advance that position throughout the litigation. *See* Mem. of Law in Opp'n to Pls.' Mot. for a Prelim. Inj., ECF No. 25 at 2 ("The reasonable decision to issue the IFR in order to provide a remedy expressly for the temporary suspension of certain workloads was not arbitrary or capricious."). It is possible that a reviewing Court would ultimately agree with the Agency's position.

Plaintiffs also run a risk that they could prevail on liability on some or all claims but nonetheless achieve relief that is significantly more limited than what is sought in the Complaint. Tarantolo Decl. ¶ 11. For example, the Court could agree that the Agency's notice regarding the IFR violated due process, *see* Compl. ¶¶ 323–26, but grant as relief only the mandate of a new notice, which would mean that not a single Class Member would receive a Court-ordered waiver or refund. By contrast, Plaintiffs estimate that millions of dollars of waivers will be granted under the Settlement.

**Risks of maintaining the class action through the trial (Factor 6):** The sixth *Grinnell* factor "weighs in favor of settlement" where "it is likely that defendants would oppose class certification" if the case were to be litigated. *Garland v. Cohen & Krassner*, 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011). While Plaintiffs believe that their arguments in favor of class certification have merit, and that a Class would ultimately be certified, Defendant would likely oppose certification. Indeed, Defendant already *did* oppose certification, arguing that Plaintiffs' proposed class actually consisted of twelve separate groups that should be treated differently throughout the course of the litigation. See Mem. of Law in Opp'n to Pls.' Mot. for a Prelim. Inj., ECF No. 25 at 46–50 ("The multitude of permutations defeats commonality and typicality in this

case. All of this underscores the point that, here, individualized determinations are needed, and class certification is inappropriate."). This factor thus weighs in favor of approval of the settlement.

**Ability of the defendant to withstand a greater judgment (Factor 7):** As a federal agency, Defendant, theoretically, can withstand a greater judgment, but any such judgment against Defendant would fall on the taxpayers. *See Furlong v. United States*, 132 Fed. Cl. 630, 634 (2017); *Berkley v. United States*, 59 Fed. Cl. 675, 712–13 (2004) ("The ability of the defendant, in this case the United States government, to withstand a greater judgment weighs neither in favor of nor against approving the settlement."). In any event, the Complaint does not seek monetary damages. But the analogous question for a large Federal agency administering public benefits like SSA is, as a practical matter, the logistical and administrative limitations to SSA's ability to expeditiously effectuate relief to the Class. Plaintiffs spent months negotiating with Defendant to provide relief to the Class on as fast of a timeframe as the Agency could provide; Plaintiffs have been persuaded by Defendant that the Settlement Agreement provides relief to Class Members as quickly as is possible for the Agency. Even if Plaintiffs were to litigate to judgment and obtain a Court order to provide waivers, refunds, notices, or other relief, the Agency would still require the same amount of time to administratively issue that relief, but with a clock delayed by the years it took to reach judgment. Tarantolo Decl. ¶¶ 11–14.

**Range of reasonableness of the settlement in light of the best possible recovery and attendant risks of litigation (Factors 8 and 9):** In analyzing the reasonableness of the settlement, the Court must assess "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation omitted). In other words, "[t]he adequacy of the [settlement] should be judged in light of the strengths and weaknesses of

the plaintiff[s'] case." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000) (internal quotation omitted).

The proposed settlement provides the Class extremely valuable relief. Class Members who incurred SSI overpayments for any month(s) from March 2020 through September 2020 that were manually processed are now receiving the *full* relief that they might obtain through litigation: a waiver of their eligible overpayment and return (via underpayment or refund) of previously recouped funds, without each of them having to separately request a waiver. Settlement Agreement ¶¶ 2(a), 2(b). From the perspective of Class Members, these waivers and, where applicable, these refunds, will happen without them having to take any action. The fact that these waivers do not require Class Members to take any action provides tremendous value to the Class that cannot be overstated. This is particularly true given the challenges faced by Class Members who have limited means and are elderly or disabled or both.

Under the settlement, the remainder of the Class will receive the benefit of administrative guidance that, as designed, would help ensure that a waiver is granted where COVID-19-related circumstances, like those envisioned in the Complaint, prevented an individual from complying with SSI reporting requirements and led to an overpayment, provided the remaining regulatory requirements for waiver are met. And, these Class Members will be sent an individual notice explaining the guidance and giving instructions about how to request such a waiver. Because Class Counsel will have the opportunity to review this notice before it is finalized, Class Counsel can take steps to ensure that the language of the notice is clear and straightforward. Thus, if a Class Member experienced the harms described in the Complaint as a result of the pandemic, and does submit a waiver request, the new guidance should help ensure that those circumstances are appropriately considered when the Agency determines whether an individual was at fault in

causing the overpayment as part of the process of adjudicating a request for a waiver. The notice-and-guidance relief for Class Members other than those with March to September 2020 manual SSI overpayments is particularly valuable in light of the fact Defendant indicated it would contest that group's claims strongly throughout litigation if the case proceeded. See Mem. of Law in Opp'n to Pls.' Mot. for a Prelim. Inj., ECF No. 25, at 20–22 ("SSI recipients who incurred overpayment debts during the March–September 2020 Timeframe and those who incurred debts afterward are not similarly situated. . . . [T]he latter group presumably would not have been affected by the workload suspension.").

  **b.**  **Rule 23(e)(2)(C)(ii): Effectiveness of Proposed Method of Distributing Relief to the Class**

Rule 23(e)(2)(C)(ii) directs the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The method of distributing relief to the Class is highly efficient, as it relies exclusively on the Agency's already-existing methods of communicating with and providing refunds to Class Members, who are current or former SSI recipients. Specifically, under the Settlement, the Agency will effectuate waivers of eligible March-September 2020 manual SSI overpayments, with no need for any action by the Class Member, and it will provide any underpayments and, where applicable, refunds through its typical process of payment to the financial institution in which the claimant currently receives their SSI benefits. Settlement Agreement ¶¶ 2(a), 2(b), 2(c). Further, the Agency will provide notice to all Class Members via postal mail, using mailing processes similar to those it uses for other SSI-related notices. *Id*. ¶ 2(e).[13]

---

[13] For individuals who are no longer SSI recipients, the agency will mail notices the last known address that the Agency has on file in its systems.

### c.    Rule 23(e)(2)(C)(iii): Attorneys' Fees

The proposed Settlement reflects the Agency's agreement to provide $268,000 in attorneys' fees and $2,702 in costs to Class Counsel to satisfy Plaintiffs' claim for reasonable attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). This award of attorneys' fees and costs does not negatively impact the Class Members in any respect, because the Plaintiffs have sought only declaratory and injunctive relief in the Complaint and thus a fee award to Plaintiffs is wholly separate from the relief provided to the Class. Tarantolo Decl. ¶ 25. In any event, an award of attorneys' fees in this action is eminently reasonable, as Class Counsel are highly skilled, have expended hundreds of hours litigating this action, and have reached a settlement that provides tremendous value to the Class. *Id.* ¶¶ 20–25. Argument Section III, *infra*, provides more information regarding this stipulated fee award and its reasonableness, given that Class Counsel only requested a small fraction of the fees for hours worked on this matter. *See supra* at Background Section IV.D.

### d.    Rule 23(e)(2)(C)(iv): Agreements Made in Connection with Proposal

Rule 23(e)(2)(C)(iv) directs the Court to consider "any agreement made in connection with the [settlement] proposal." There are no agreements made in connection with the proposed Settlement other than the Settlement Agreement itself. Tarantolo Decl. ¶ 10.

### 4.    Rule 23(e)(2)(D): The Proposal Treats Class Members Equitably Relative to Each Other

The Settlement is fair and treats Class Members equitably relative to each other. "The method of allocation need not be perfect [to warrant preliminary approval]; it must only be rationally related to the relative strengths and weaknesses of the . . . claims asserted." *Sand v. Greenberg*, No. 08 Civ. 7840, 2011 WL 1338196, at *5 (S.D.N.Y. Mar. 22, 2011) (internal

quotation marks and citation omitted). As previously discussed, *supra* Background Section IV, the Settlement provides relief to two different groups: first, those Class Members who were assessed a manual SSI overpayment incurred for any month(s) from March 2020 through September 2020 (excluding cases of fraud, similar fault, or misuse of benefits by a representative payee) and, second, all other Class Members, meaning all individuals who were assessed any other SSI overpayment (manually assessed or identified through automated processes) incurred for any month(s) from March 2020 through April 2023. All Class Members *within* each group are treated the same as each other. Further, drawing a distinction *between* the two groups is rationally related to the strengths of the claims of each. The first group comprises Class Members whose manual overpayments were incurred during the time period covered by the IFR. The second group, by contrast, includes Class Members who had other overpayments: those incurred during the same period but identified automatically (i.e., non-manually) and/or those incurred after the time period covered by the IFR. Settlement Agreement ¶ 3(a). Because these claims were more complicated and faced additional risk than the first group, it is reasonable that the two groups receive different relief.

### 5.    Additional *Grinnell* Factors

The second *Grinnell* factor asks the Court to consider the reactions of the Class to the settlement. All Named Plaintiffs approve of the settlement. Tarantolo Decl. ¶ 17. While the remainder of the Class has not had an opportunity to weigh in on the settlement, Plaintiffs believe that approval is nonetheless appropriate.  As detailed in Argument Section I.B, *infra*, Plaintiffs propose that approval be granted without prior notice to the Class, given the tremendous benefits to the Class provided by the Settlement, the high cost to the public fisc that two rounds of notice would impose, the fact that the Settlement expressly preserves all Class Members' rights to raise

any issues or claims with respect to their own SSI benefits, and the importance of expedient approval so that relief can begin to be provided soon. *Selby v. Principal Mut. Life Ins. Co.*, No. 98 CIV. 5283(RLC), 2003 WL 22772330, at *2 (S.D.N.Y. Nov. 21, 2003). This factor can "be disregarded since in this case notice to the . . . class will not be given." *Id*. at 6 n.9.

The third *Grinnell* factor, which focuses on the stage of the proceedings and the amount of discovery completed, also favors approval of the settlement. In general, settlement is appropriate as long as "the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 Civ. 5575, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). While the Parties have not engaged in formal discovery, this case turns on the legality of a federal agency's generally-applicable policies and procedures, and so even before discovery, the Parties are in a position to assess the claims' strengths and weaknesses. Tarantolo Decl. ¶¶ 11–12, 20–21. Plaintiffs engaged in a tremendous amount of factual and legal investigation before filing this complaint, and Class Counsel includes nationally-recognized experts on the provision of SSI benefits. Tarantolo Decl. ¶¶ 20–21. Plaintiffs' Preliminary Injunction Memorandum, ECF No. 24, sets forth a clear understanding of the factual and legal bases of their claims, a factor that weighs in favor of settlement.

### B.    Approval Without Class Notice is Appropriate, Even Necessary

Many courts have adopted a "functional interpretation" of Rule 23(e)'s pre-approval notice requirement, forgoing such notice in circumstances where there is no risk to Class Members and skipping pre-approval notice would give Class Members substantial, tangible benefits. *Green v. Am. Exp. Co.*, 200 F.R.D. 211, 212 (S.D.N.Y. 2001). "This approach is sound," even though "the plain language of Rule 23(e) appears to mandate that notice of a proposed dismissal, settlement or

27

compromise be provided." 2 McLaughlin on Class Actions § 6:20 (19th ed. 2022)"); *see also Green*, 200 F.R.D. at 212 (notice "not uniformly required").

Courts have recognized that requiring pre-approval notice as an "absolute rule" risks "harm[ing] the potential beneficiaries (the putative class) that the rule was meant to protect," because "[r]equiring Rule 23(e) notice and full class treatment of every putative class action [can] be both time consuming and costly." *In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. 429, 441 (D.N.J. 2000). Instead, a Court may take "a more flexible, reasonable approach to notice, which should depend on whether the facts surrounding a compromise or settlement dictate the necessity of notice to prevent Rule 23 abuse, or to protect the interests of putative class members." *Id.*

"Courts within the Second Circuit have been relatively liberal in approving settlements under the functional approach." *J.S. v. Attica Cent. Sch.*, No. 00–CV–513S, 2012 WL 3062804, at *3 (W.D.N.Y. July 26, 2012). "The district court has virtually complete discretion" on the question of notice. *Jermyn v. Best Buy Stores, L.P.,* No. 08 CIV. 214 CM, 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012) (quoting *Handschu v. Special Svcs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986)). And there are "no rigid rules" that the Court must follow. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005).

Numerous courts have approved class settlements without pre-approval notice in situations similar to those here.[14] These Courts have identified the following seven circumstances in which

---

[14] *See Green v. Am. Exp. Co.*, 200 F.R.D. 211, 212 (S.D.N.Y. 2001); See *Selby*, 2003 WL 22772330, at *16; *In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. 429, 441 (D.N.J. 2000); *J.S. v. Attica Cent. Sch.*, No. 00–CV–513S, 2012 WL 3062804, at *3 (W.D.N.Y. July 26, 2012); *Jermyn v. Best Buy Stores, L.P.*, No. 08-CV-214 (CM), 2012 WL 2505644; *Doe by Doe v. Perales*, 782 F. Supp. 201, 206 (W.D.N.Y. 1991); *Town of Greece, N.Y. v. Eastman Kodak Co.*, No. 06  Civ. 6570L(F), 2007 WL 2126277; *Baumgarten v. CleanWell LLC*, No. 16-CV-1780 (SMG), 2017 WL 11648985 (E.D.N.Y. Aug. 21, 2017); *Plaskow v. Peabody Intern. Corp.*, 95 F.R.D. 297 (S.D.N.Y. 1982); *cf. Sheinberg v. Fluor Corp.*, 91 F.R.D. 74, 75 (S.D.N.Y. 1981); *Anderberg v. Masonite Corp.*, 176 F.R.D. 682

forgoing pre-approval notice is appropriate: (1) "when the terms of the settlement provide near complete relief to the plaintiffs," *Green*, 200 F.R.D. at 212; (2) when the substantive relief provided by the settlement is itself notice, rendering pre-approval notice potentially confusing and duplicative[15]; (3) when "the rights of absent Class Members" are not "compromised in any way," *Selby*, 2003 WL 22772330, at *4; (4) "when the settlement provides for only injunctive relief, and, therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class," *Green*, 200 F.R.D. at 212; (5) "when there is no evidence of any collusion between the parties," *id.*; (6) when "[t]he significant time delay that can be involved in providing notice may also further injure putative class members waiting for the relief that they rightly deserve," *In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. at 441; and (7) "when the cost of notice would risk eviscerating the settlement agreement." *Green*, 200 F.R.D. at 212. All seven of these circumstances are present here, providing a compelling justification for granting final approval of the Settlement without pre-approval notice. Absent such approval, a settlement is extremely unlikely, which would cause significant harm to Class Members.

### 1. Class Members with March-September 2020 Manual SSI Overpayments Receive Complete Relief Under the Settlement as to those Overpayments

In circumstances in which "the terms of the settlement provide near complete relief to the plaintiffs," pre-approval notice is not necessary. *Green*, 200 F.R.D. at 212.[16] This rationale

---

(N.D. Ga. 1997); *Jaen v. New York Tel. Co.*, 81 F.R.D. 696 (S.D.N.Y.1979); *Berse v. Berman*, 60 F.R.D. 414, 416 (S.D.N.Y. 1973); *Robinson v. First Nat. City Bank*, 482 F. Supp. 92, 100 (S.D.N.Y. 1979); *Larkin General Hospital, Ltd. V. American Tel. & Tel. Co.*, 93 F.R.D. 497 (E.D. Pa. 1982); *Shelton v. Pargo*, 582 F.2d 1298 (4th Cir. 1978); *Magana v. Platzer Shipyard, Inc.*, 74 F.R.D. 61, 67–68 (S.D. Tex. 1977); *Glidden v. Chromalloy American Corp.*, 808 F.2d 621 (7th Cir. 1986).

[15] *Salazar v. King*, No. 14 Civ. 1230 (RWS) (S.D.N.Y.), ECF No. 72 (final order approving Settlement); *Quero v. DeVos*, No. 18 Civ. 9509 (GBD) (S.D.N.Y.), ECF No. 45 (final order approving Settlement).

[16] *See also Baumgarten v. CleanWell LLC*, No. 16-CV-1780 (SMG), 2017 WL 11648985 (E.D.N.Y. Aug. 21, 2017); *Doe by Doe v. Perales*, 782 F. Supp. 201 (W.D.N.Y. 1991); *J.S. v. Attica Cent. Sch.*, No. 00–CV–513S, 2012 WL 3062804, (W.D.N.Y. July 26, 2012); *Selby v. Principal Mut. Life Ins. Co.*, No. 98 CIV. 5283(RLC), 2003 WL 22772330, (S.D.N.Y. Nov. 21, 2003).

straightforwardly applies to manual SSI overpayments incurred from March through September 2020, which are receiving "100% of the most advantageous result of litigation." *Plaskow v. Peabody Intern. Corp.*, 95 F.R.D. 297, 298 (S.D.N.Y. 1982); *see supra* Argument Section I.B; Compl. ¶¶ 75. Where, as here, one would be "hard pressed to imagine a more adequate form of injunctive relief than what is already required by the Settlement," approval without pre-approval notice to the Class is appropriate. *Selby*, 2003 WL 22772330, at *4.

### 2. The Primary Substantive Relief Provided to All Other Class Members Is Notice and So Pre-Approval Notice Would Be Confusing and Duplicative Here

For all remaining Class Members (that is, those who were assessed an overpayment *other than* a March-September 2020 manual SSI overpayment), the substantive relief provided by the settlement is itself notice. Specifically, these Class Members will be advised, through post-approval notice, of their right to seek a waiver of that overpayment due to COVID-19-related factors, and will be given a description of the administrative guidance that will direct SSA staff how to consider such waiver requests when the individual alleges the relevant COVID-19 factors. *See* Settlement Agreement ¶ 3(a).

This is a classic situation where pre-approval notice would be duplicative, confusing, and even harmful, simply alerting Class Members that, later on, they will get a second notice in the future that will advise them of their rights. A notice stating that someone will receive another notice at some undetermined future point is likely to be a "fruitless yet costly gesture," and to raise more questions than it answers. *See Glidden v. Chromalloy Am. Corp.*, 808 F.2d 621, 627 (7th Cir. 1986). Moreover, if Class Members were to receive pre-approval notice advising them of the possible future implementation of the administrative guidance, before the guidance is itself in effect, many Class Members might immediately seek a waiver, but that waiver would *not* be

governed by the guidance, which would not be in place yet. If such a waiver request were denied, the Class Member would reasonably be discouraged, and would be extremely unlikely to try again later on in response to the "real" notice months or years later, once the guidance is in effect. As a result, such Class Members, in practice, would never get the benefit of the new guidance.

Notably, Class Counsel the New York Legal Assistance Group previously obtained approval of two similar class action settlements without prior notice to the class. Both cases, as here, were class action lawsuits against a federal agency stemming from, in part, the agency's failure to provide adequate notice. In one of them, for example, Judge Sweet approved a class settlement without prior notice where the substantive relief involved the U.S. Department of Education mailing a notice to 60,000 student loan borrowers to advise them of their rights to seek loan discharge. *Salazar v. King*, No. 14 Civ. 1230 (RWS) (S.D.N.Y.), ECF No. 72 (final order approving Settlement). The second case involved a similar scheme. *Quero v. DeVos*, No. 18 Civ. 9509 (GBD) (S.D.N.Y.), ECF No. 45 (final order approving Settlement without prior notice where relief was providing notice to advise class members of rights). Crucially, in both, all Class Members maintained all rights to assert all of their own individual claims or defenses in connection with their own student loans, just as Class Members here do as well with respect to their SSI benefits.

### 3.    The Settlement Would Not Waive Any Class Member's Rights Relating to Their Own SSI Benefits

The most important factor in determining whether pre-approval notice is necessary is "whether the rights of absent Class Members [would be] compromised in any way." *Selby*, 2003 WL 22772330, at *4. This is the "key question" in considering approval without prior notice. *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 214 CM, 2012 WL 2505644, at *12 (S.D.N.Y. June

27, 2012).[17] Here, the Settlement provides that every Class Member reserves all rights with respect to his or her *own* SSI benefits: "Nothing in th[e] Settlement Agreement shall limit, restrict, or release any Class Member's right to request individual relief in connection with any Overpayment, including, but not limited to, relief sought through a request for waiver or reconsideration or any administrative or judicial appeal thereof, consistent with applicable laws, regulations, and Agency policy." Settlement Agreement ¶ 6(b).

Under the Settlement, Class members only release the right to bring affirmative claims arising from the systemic practices challenged in the Complaint. *Id.* ¶ 6(a). In situations like this, where "the only thing they may not do, according to the class release, is sue for some alternative form of injunctive or declaratory relief that seeks to redress the alleged practice," courts may forgo pre-approval notice without concern that class members' rights are being unduly compromised. *Jermyn*, 2012 WL 2505644, at *12  (alteration omitted); *cf. Baumgarten v. CleanWell LLC*, No. 16-CV-1780 (SMG), 2017 WL 11648985, at *2 (E.D.N.Y. Aug. 21, 2017) (approving injunctive relief settlement without pre-approval notice where class members retained the right to sue for money damages). Where, as here, there is a "very narrow release of class claims," approval without prior notice is appropriate. *Selby*, 2003 WL 22772330, at *3. The same circumstances also applied in the previous settlements entered by Class Counsel discussed *supra* Argument Section I.B.2: in both cases, class members gave up their rights to bring systemic litigation, but preserved all of their rights with respect to their own student loans. *See Salazar v. King*, No. 14 Civ. 1230 (RWS) (S.D.N.Y.), ECF No. 72; *Quero v. DeVos*, No. 18 Civ. 9509 (GBD) (S.D.N.Y.), ECF No. 45.

### 4.    The Complaint Seeks Only Injunctive and Declaratory Relief

---

[17] *See also, e.g., Doe by Doe v. Perales*, 782 F. Supp. 201, 207 (W.D.N.Y. 1991); *Town of Greece, N.Y. v. Eastman Kodak Co.*, No. 06  Civ. 6570L(F), 2007 WL 2126277, at *1 (W.D.N.Y. July 24, 2007); *Sheinberg v. Fluor Corp.*, 91 F.R.D. 74, 75 (S.D.N.Y. 1981).

Courts approve settlements without pre-approval notice "when the settlement provides for only injunctive relief, and, therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class." *Green*, 200 F.R.D. at 212.[18] This rationale applies here. Plaintiffs' complaint sought only injunctive and declaratory relief, and sought certification only under Rule 23(b)(2). "There is no right to opt out of a class certified or settled under Rule 23(b)(2) for injunctive relief. . . . Accordingly, courts have often approved settlements with no class notice under these circumstances." *Jermyn*, 2012 WL 2505644, at *12. Because this case brought no claims for monetary damages, there is no potential for Named Plaintiffs or Class Counsel to benefit financially at the Class's expense—for example, by taking a larger share of a common fund or a higher-than-deserved monetary recovery.

### 5.    There Has Been No Collusion Between the Parties

Pre-approval notice is often mandated, in part, to protect against collusion between the parties. *Green*, 200 F.R.D. at 212. But where, as here, "there is no evidence of any collusion between the parties"—indeed, this case has been a model of vigorously contested, arm's length settlement negotiations—that rationale does not apply, and dispensing with pre-approval notice is appropriate. *Id.*[19] The history of this case, and the nature of the bargain struck in the Settlement, amply demonstrate this.

First, as detailed above, *supra* at Argument Section I.A.2, this Settlement was intensively and painstakingly negotiated at arms' length. The Court was "privy to the[se] arms-length negotiations and both parties' zealous advocacy for their respective client[s]," with many Court-led mediation sessions occurring over the span of over a year. *Green*, 200 F.R.D. at 213. Counsel

---

[18] *See also Baumgarten* v. *CleanWell LLC*, 2017 WL 11648985; *Doe by Doe v. Perales*, 782 F. Supp. 201; *J.S. v. Attica Cent. Sch.*, 2012 WL 3062804; Jermyn v. Best Buy Stores, L.P., 2012 WL 2505644.

[19] *See also Baumgarten* v. *CleanWell LLC*, 2017 WL 11648985; *Doe by Doe v. Perales*, 782 F. Supp. 201; *Jermyn* v. *Best Buy Stores, L.P.*, 2012 WL 2505644; *Anderberg v. Masonite Corp.*, 176 F.R.D. 682 (N.D. Ga. 1997).

has also represented that there has been no collusion or bad faith. *See In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. at 440; *see* Tarantolo Decl. ¶¶ 7–9.

Second, "[b]oth sides were represented by experienced counsel" with "extensive experience handling complex plaintiffs' class actions" and cases regarding SSA benefits specifically. *Selby*, 2003 WL 22772330, at *4.

Third, it is plain here that "Defendant[] did not buy off the class representatives," because "the named Plaintiffs will not be in a substantially better position after the settlement than will absent class members." *In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. at 443–44.

Fourth, "this settlement was not reached solely to obtain attorneys fees," and "these fees were only negotiated after [relief] for the entire class had been agreed upon." *Id.* at 444. Where, as here, "attorneys' fees are manifestly fair and reasonable," *see* Tarantolo Decl. ¶¶ 25–33, "the risk of foul play is largely diminished." *J.S. v. Attica Cent. Sch.*, No. 00-CV-5143S, 2012 WL 3062804, at *3 (W.D.N.Y. July 26, 2012) (quotation omitted); *see also Plaskow v. Peabody Intern. Corp.*, 95 F.R.D. 297, 299 (S.D.N.Y. 1982); *see also infra*, Argument Section III.

Finally, "the nature of the final agreement itself negates the possibility that the settlement is the product of collusion." *In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. at 443. Specifically, "[t]he adequacy, fairness, and reasonableness of" this Settlement, detailed *supra* Background Section III and Argument Section I.A.2, are "indicative of a lack of collusion among counsel." *J.S. v. Attica Cent. Sch.*, 2012 WL 3062804, at *5. This Settlement is "designed to benefit literally millions" of SSI recipients and "will be of great benefit to" many who are "impoverished," which further supports approval without prior notice. *In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. at 443–44.

### 6.    Pre-Approval Notice Would Delay Critical Relief Under the Settlement

"The significant time delay that can be involved in providing notice may . . . further injure putative class members waiting for the relief that they rightly deserve." *See In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. at 441. In this case, requiring pre-approval notice would create a delay of *years*. The Class is massive, and sending a notice to everyone would be an enormous administrative lift. As described above, Class Counsel pushed hard on the quickest timeline for the post-approval (substantive) notice. The outcome of these negotiations is that the Settlement provides thirteen and a half to sixteen months after the Final Settlement Date for the post-approval notice to be mailed.[20] Settlement Agreement ¶ 3(d). It is reasonable to assume that a round of pre-approval notice would require the same amount of time. If the approval process were delayed to permit such notice, followed by a period for Class Members to submit objections and to thereafter hold a fairness hearing, the time between preliminary and final approval would likely be close to two years, at best. This is not in the best interests of the Class, who would not get the benefits of the administrative guidance, waivers, and potential return of funds provided for under the Settlement Agreement. Worse still, some Class Members would continue to have a portion of their benefits recouped each month to collect overpayments that will ultimately be waived through this settlement. *Id.*; *supra* Argument Section I.A.3. This delay is "particularly unconscionable" here where many Class Members have very low incomes and assets and are also elderly, disabled, or both. *See In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. at 435. Moreover, the delay would make some of the ultimate relief much less valuable because Class Members will be less likely successfully seek a waiver for COVID-19-related circumstances

---

[20] The Settlement allots an additional month in the event that Plaintiffs request modifications to the Agency's draft notice.

as time goes on, as their own memory of the events is likely to recede and relevant documentation may become unavailable or difficult to procure.

Accordingly, because "requiring notice and a hearing in this case would entail substantial delay and concomitant cost, all to the detriment of the class itself," approval without prior notice should be granted. *Doe by Doe v. Perales*, 782 F. Supp. 201, 207 (W.D.N.Y. 1991).

### 7. Two Rounds of Notice Would Be Prohibitively Expensive and Risk Eviscerating the Settlement Agreement

Courts approve class action settlements without pre-approval notice when "the cost of notice would risk eviscerating the settlement agreement." *Green*, 200 F.R.D. at 212.[21] This factor strongly weighs in support of approval here. With over 2.35 million Class Members, the cost of sending the substantive notice that is part of the relief mandated by this Settlement will itself be significant. If an additional pre-approval notice needed to be sent, it would be extremely costly. "Rule 23(e). . . does not compel the parties to incur pointless expense." *Glidden v. Chromalloy Am. Corp.*, 808 F.2d 621, 627 (7th Cir. 1986). Even estimating based on the cost of one stamp per Class Member would be over $1.5 million, and that does not even take into account the significant cost of printing the notice and other related charges. *see In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. at 446 (approving settlement without pre-approval notice in light of "great cost of notice" to a "putative class number[ing] in the millions.").

SSA has also said that it cannot fully develop related guidance and policies until this Court finally approves the Settlement; as a result, pre-approval notice would also delay the issuance of the guidance provided for by the Settlement. Pre-approval notice also may be confusing and counter-productive because it would be advising Class Members of relief that the Agency could

---

[21] *See also Baumgarten v. CleanWell LLC*, 2017 WL 11648985; *Doe by Doe v. Perales*, 782 F. Supp. 201; *J.S. v. Attica Cent. Sch.*, 2012 WL 3062804; *Sheinberg v. Fluor Corp.*, 91 F.R.D. 74.

not yet provide them. Overall, pre-approval notice would provide little value to Class Members, while causing delay that would diminish the usefulness of some of the relief they ultimately would receive.

Accordingly, this is a classic situation where "the cost of [pre-approval] notice . . . would jeopardize, and likely destroy, the hard fought settlement agreement that the parties have presented to this Court." *Green*, 200 F.R.D. at 213; *see also Selby*, 2003 WL 22772330, at *5 (same). Approval without prior notice to the Class is thus the only way to get exceptionally valuable relief to Class Members in a manner and timeframe that will most benefit them.

## VI.    THE COURT SHOULD GRANT CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

"Assessment of class certification in the settlement context invokes a 'responsibility imposed upon [the courts] to exercise independent judgment for the protection of class absentees.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 51 (E.D.N.Y. 2019) (quoting *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d at 634)). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). "The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and . . . the Second Circuit's general preference is for granting rather than denying class certification." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (quotations omitted). Because the proposed class satisfies the requirements of Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, the Court should certify this settlement class, as described *supra* Background Sections IV.A, IV.B, and in the Settlement Agreement at Paragraph 5(a).

### A.    Courts Routinely Certify Classes in Similar Cases.

Courts have frequently certified classes of applicants and recipients of public benefits seeking to challenge a policy that reduces their public benefits or delays access to them.  *See e.g.*, *White v. Mathews*, 559 F.2d 852, 858 (2d Cir. 1977) (certifying class of Social Security Disability Insurance claimants who challenged the delays in processing their disability claims); *Morel*, 927 F. Supp. 622, 634 (certifying class of recipients of federal and state public benefits who suffered the protracted denial of aid continuing benefits); *Mayer v. Wing*, 922 F. Supp. 902, 907–08 (S.D.N.Y. 1996) (certifying class of Medicaid recipients of personal care services whose care was threatened with reduction or termination by city and state agencies even though their need had not changed); *Catanzano v. Dowling*, 847 F. Supp. 1070, 1074 (W.D.N.Y. 1994) (noting that the court previously certified a class of all recipients of Medicaid in Monroe County who received home health care, and who were threatened with receiving less care than that ordered by their treating physicians by state and county agencies).

### B.    The Settlement Class Satisfies the Requirements of Rule 23(a).

#### 1.    The Class Is So Numerous That Joinder of All Class Members Is Impracticable.

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Impracticable does not mean impossible, but simply difficult or inconvenient. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). The Second Circuit has held that the numerosity requirement is presumptively satisfied where there are at least forty class members. *See Marisol A. v. Giuliana*, 126 F.3d 372, 376 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1997)); *Stinson v. City of New York*, 282 F.R.D. 360, 369 (S.D.N.Y. 2012) (citation omitted); *Alexander A. ex rel. Barr v. Novello*, 210 F.R.D. 27, 33 (E.D.N.Y. 2002) (citation omitted). This Settlement Class is estimated to include approximately

2.35 million members, Tarantolo Decl. ¶ 15, which is many orders of magnitude more than necessary to satisfy the numerosity requirement.

### 2.     The Settlement Class Members Share Common Issues of Law and Fact.

Rule 23(a)(2) requires that the claims of a proposed class raise common questions of law or fact.  To satisfy this criterion, Plaintiffs' "claims must depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Common questions of law and fact have been central to the litigation of this case:  *e.g.*, whether the IFR's limitations are arbitrary and capricious, and whether the overpayment notice sent by the Agency provided sufficient information for putative class members to understand their rights.  When putative class members have "allegedly [been] subjected to the same unlawful conduct . . . under the auspices of a single [government] program," the commonality requirement is "readily" satisfied. *See Ligon v. City of New York*, 288 F.R.D. 72, 82 (S.D.N.Y. 2013).[22]

### 3.     Named Plaintiffs' Claims Are Typical of the Settlement Class.

To establish typicality, "each class member's claim [must] arise[] from the same course of events." *Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 389 (S.D.N.Y. 2000) (internal citations omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the

---

[22] *See also M.G. v. N.Y.C. Dep't of Educ.*, 162 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) (rejecting argument that no commonality existed because government program was "individualized to each student's needs" where plaintiffs sought "injunctive relief from limitations that the [regulation] places on students' access to Related Services overall—a matter that can and should be resolved on a class-wide basis"); *Guadagna v. Zucker*, 332 F.R.D. 86, 95 (E.D.N.Y. 2019) (certifying class where plaintiff "faults the Defendant for failing to implement a uniform policy that protects the rights of enrollees transferring from a closing plan"); *Davis v. City of New York*, 296 F.R.D. 158, 166 (S.D.N.Y. 2013) (commonality was satisfied where a centralized policy promulgated by senior city officials, rather than delegated discretion exercised by particular individuals, caused the injuries to putative class members); *Cruz v. Zucker*, 195 F. Supp. 3d 554, 563, 565–66 (S.D.N.Y. 2016) (denying request to decertify a class for lack of commonality where the class claimed that DOH wrongfully denied Medicaid coverage for gender dysphoria), *modified on other grounds on reconsideration by* 218 F. Supp. 3d 246 (S.D.N.Y. 2016).

named plaintiff[s] and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37.  In addition, "named plaintiffs satisfy the typicality requirement when all members of the class would benefit from the named plaintiffs' action." *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, 201 F.R.D. 326, 332 (S.D.N.Y. 2001); *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 206 (E.D.N.Y. 2005).

The Named Plaintiffs' claims are typical of those of the rest of the Settlement class because each Plaintiff, like all members of the class, is or was an SSI recipient who incurred an overpayment for one or more months in the period March 2020 through April 2023.  Each of the Named Plaintiffs incurred an overpayment for one or more months in the period March 2020 through September 2020 and did not obtain a "streamlined" waiver pursuant to the IFR, although some of their March-September 2020 SSI overpayments may have been subsequently reversed or waived pursuant to typical procedures. Tarantolo Decl. ¶ 18. All were also assessed overpayments for one or more months in the period October 2020 through April 2023 that were not eligible for streamlined waiver under the terms of the IFR. *Id.*

Because the Named Plaintiffs and putative class members were all subject to the same general course of conduct (*i.e.,* assessment of overpayments for the periods at issue in the complaint) by SSA, and their claims are based on the same legal theories, typicality is satisfied. *See Lovely H. v. Eggleston*, 235 F.R.D. 248, 256 (S.D.N.Y 2006) (typicality established where both named plaintiffs and putative class members were disabled welfare recipients who experienced "involuntary reassignment" to three centralized offices for the purpose of receiving welfare-related services, which plaintiffs claim "violated their rights to be free from disability-based discrimination and denied them due process of law"); *Hilton v. Wright*, 235 F.R.D. 40, 52

(N.D.N.Y. 2006) (typicality met where "the claims of the representative parties and the members of the prospective class all center around defendants' application" of a single policy).

### 4. Named Plaintiffs and Their Counsel Adequately Represent the Settlement Class.

Fed. R. Civ. P. 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class, measured by two factors: (1) class counsel must be qualified, experienced, and generally able to conduct the litigation, and (2) the interests of the named plaintiffs cannot be antagonistic to those of the remainder of the class. *See Reynolds*, 118 F. Supp. 2d at 390. Both factors are met here.

Counsel are experienced in class action litigation in federal and state courts, including matters relating to public benefits, and have prosecuted this action vigorously and competently. Tarantolo Decl. ¶ 21. NYLAG is a public-interest law firm with extensive experience in public assistance and class action litigation, including in the courts of New York State and in the United States District Courts in New York. *Id.* ¶ 22. Justice in Aging is a nonprofit legal advocacy firm representing low income older adults on issues relating to income stability and access to health care, with experience and expertise in public benefit programs relied upon by older adults, including Social Security law, and experience in class action litigation across the country, including Social Security matters. *Id.* ¶ 23. Finally, Arnold & Porter Kaye Scholer LLP, a law firm with extensive global reach, experience and deep knowledge across geographic, cultural, technological and ideological borders, has extensive experience in class-action cases, and has previously served as co-counsel with NYLAG and Justice in Aging in a case against SSA on behalf of SSI recipients. *Id.* ¶ 24.

The interests of the Named Plaintiffs are identical to those of the proposed class because they are or were all SSI recipients subject to the same overpayment policies. *Id.* ¶ 18. The relief

Named Plaintiffs sought, and the relief they have secured via settlement, will have no detrimental effect on any of the other putative class members, but will only benefit them. *Id.* ¶ 19. Thus, the proposed class satisfies the requirements of Rule 23(a)(4).

###### 5.      The Settlement Class Satisfies the Requirements of Rule 23(b)(2).

Plaintiffs seek certification for settlement purposes here under Rule 23(b)(2), which allows for the maintenance of a class action if "[1] the party opposing the class has acted or refused to act on grounds that apply generally to the class, [2] so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Both of these requirements are met here for purposes of settlement. The SSA regulations and policies that Plaintiffs challenged in the Complaint applied to all members of the proposed class. Members of the proposed class all are current or former SSI recipients who were assessed overpayments incurred for any month(s) from March 2020 through April 2023. Tarantolo Decl. ¶ 18. Courts in this Circuit have routinely held that cases like this one—alleging systemic acts or failures to act by a government entity—are uniquely appropriate for class certification under Rule 23(b)(2).[23] Here, Plaintiffs alleged that SSA has systemically failed to protect putative class members' rights. Thus, certification of the proposed settlement class under Rule 23(b)(2) is appropriate.

---

[23] *See Shakhnes*, 740 F. Supp. 2d 602, 628 ("[C]ivil rights actions . . . alleging systemic administrative failures of government entities [ ] are frequently granted class action status under Rule 23(b)(2)."); *see also Clark v. Astrue*, 274 F.R.D. 462, 471 (S.D.N.Y. 2011) (approving nationwide class under 23(b)(2) in challenge to generally applicable Social Security Administration policy); *Lovely H.*, 235 F.R.D. at 257 (approving Rule 23(b)(2) class of city welfare recipients with disabilities, challenging the city's decision to involuntarily transfer all class members to different offices to receive welfare-related services); *M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 442 (S.D.N.Y. 2006) (certifying immigrant class seeking to correct "systemic deficiencies" in the way New York agencies administered statutes and regulations "governing immigrant eligibility for benefits"); *Mayer v. Wing*, 922 F. Supp. 902, 908 (S.D.N.Y. 1996) (certifying plaintiff class whose home health care services had been reduced or terminated by the state and/or city).

## VII.    THE STIPULATED ATTORNEYS' FEES AND COSTS AWARD IS REASONABLE AND SHOULD BE APPROVED

Under the Settlement, SSA has agreed to provide $268,000 in attorneys' fees and $2,702 in costs to Class Counsel to satisfy Plaintiffs' claim for reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Plaintiffs seek approval of this award in connection with approval of the Settlement.

"[U]nder the EAJA, eligibility for a fee award in any civil action requires: (1) that the claimant be a prevailing party; (2) that the Government's position was not substantially justified; and (3) that no special circumstances make an award unjust." *Gomez-Beleno v. Holder*, 644 F.3d 139, 144 (2d Cir. 2011) (quotations and alteration omitted). Here, Plaintiffs take the position that they are "prevailing parties" because the Settlement will "achieve some material alteration of the legal relationship between" the Class and SSA, and that change will "bear[] a judicial imprimatur." *Perez v. Westchester Cty. Dep't of Corr.*, 587 F.3d 143, 149 (2d Cir. 2009) (quotations and emphasis omitted). Plaintiffs believe the government's position was not "substantially justified" and that no special circumstances make a fee award unjust. Accordingly, Plaintiffs assert that they are eligible for fees under EAJA. Defendant takes no position at this time on whether Plaintiffs meet the criteria for entitlement to fees pursuant to EAJA but, in order to settle this matter, Defendant has voluntarily agreed to the proposed fee award in connection with settlement.

Under Rule 23, the Court must determine whether the amount of a fee award in a class action settlement is "reasonable under the circumstances." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (quotations omitted). The stipulated fee award here is reasonable. Class Counsel spent a tremendous amount of time and effort in this litigation. There were ten primary timekeepers in this action, who performed the most intensive work. These attorneys performed more than 1,500 hours of work. Even at EAJA-mandated rates, which are significantly below

market, the total lodestar for these primary timekeepers exceeds $365,000, which is nearly $100,000 more than the stipulated fee award amount.[24] Tarantolo Decl. ¶ 28. This lodestar excludes hundreds of compensable hours expended by other attorneys and non-attorneys who also worked on this case. *Id.* ¶ 29. If counsel's time were to be valued at market rates, the lodestar would be vastly higher. By way of example, if Arnold & Porter's time alone, for all timekeepers involved in prosecuting this action, were billed at that firm's standard rates, the bill would be over $750,000. *Id.* ¶ 31; *Goldberger*, 209 F.3d at 50 ("encourage[ing]" District Courts to review Class Counsel's lodestar to assess reasonableness).

All additional factors considered by the Second Circuit to be relevant to an assessment of the reasonableness of a fee award support approval of the award here. *Id.*[25] Class Counsel expended tremendous time and effort, *supra* Background Sections II, III; this litigation was complex and bore significant risk, *supra* Argument Section I.A.3; the representation, as measured by the tremendous "recovery obtained," was high quality, *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 221 (S.D.N.Y. 2015) (quotation omitted); *supra* Background Section IV.A; and the size of the fee award is extremely modest in relation to the monetary value of the waivers to be provided to a portion of the Class as part of the Settlement, *supra* Argument Section I.A.3.a; *see Staton v. Boeing*

---

[24] Moreover, Class Counsel's lodestars described above have been calculated only up through the negotiation of the stipulated fee amount and do not include the number of hours that Class Counsel has spent drafting this motion, nor any of the substantial time yet to be spent administering the settlement. Tarantolo Decl. ¶ 29.  Class Counsel calculated the lodestar using an hourly rate of $233, which the rate provided by the Equal Access to Justice Act, adjusted for cost of living via the consumer price index (CPI-U), for New York for 2022. Because the hours expended in this case span from mid-2021 into late Spring 2023, Class Counsel used the 2022 rate as an appropriate average. Tarantolo Decl. ¶ 30.

[25] The factors are: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the Settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50; *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015); *Fero v. Excellus Health Plan, Inc.*, No. 6:15-CV-06569 EAW, 2022 WL 1292133, at *2 (W.D.N.Y. Apr. 29, 2022) (applying Goldberger factors in case "primarily for injunctive relief").

*Co.*, 327 F.3d 938, 974 (9th Cir. 2003) (value of injunctive relief should be taken into account when "the monetary value of the injunctive relief can be "accurately ascertained").

Finally, public policy considerations strongly support awarding the stipulated fees to Class Counsel. NYLAG is a non-profit legal services organization that provides representation to low-income SSI beneficiaries, including Ms. Campos, K.C., Ms. Adams, Mr. Marsh, and Mrs. Rodnyanskaya, who would not otherwise have the means to obtain private counsel to assist them, and also has extensive experience in public assistance and class action litigation. Tarantolo Decl. ¶ 21. A fee award to NYLAG would support ongoing work on behalf of individuals in need. *Id.* ¶ 21. A fee award to Arnold & Porter would go towards the A&P Foundation. The A&P Foundation is a private foundation that supports minority scholarship programs at law schools around the country, fellowships at charitable organizations, civil rights organizations, pro bono programs and other charitable and education activities. Justice in Aging is a nonprofit legal advocacy firm representing low income older adults, including by bringing class actions on Social Security and other matters, and a fee award to Justice in Aging will support its legal advocacy on behalf of low income older adults.[26]

## <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs respectfully request that this Court, after a hearing (if appropriate):

1. Certify a settlement class, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, consisting of:

      i. all individuals with a March-September 2020 Manual SSI Overpayment[27], and

---

[26] The Court should approved the Settlement's $2,702 stipulated award of costs. 28 U.S.C. §§ 2412(a), (d). These costs comprise the filing fee, service of process, couriers, duplicating, and *pro hac vice* admissions. Tarantolo Decl. ¶ 33. These limited expenses are appropriate and reasonable and should be awarded pursuant to the Parties' agreement.

[27] As "March-September 2020 Manual SSI Overpayment" is defined in the Settlement Agreement.

    ii.   all individuals with an SSI Overpayment debt incurred for any months between March 2020 and September 2020 that was identified through automated processes[28], and all individuals with an SSI overpayment debt incurred for any months between October 2020 and April 2023.

2.   Appoint the New York Legal Assistance Group, Justice in Aging, and Arnold & Porter Kaye Scholer LLP as Class Counsel and Named Plaintiffs as Class Representatives;

3.   Enter the proposed final approval order, attached as Exhibit 2 to the Tarantolo Declaration; and

4.   Award such other and further relief as this Court deems just and proper.

---

[28] As "automated processes" is defined in the Settlement Agreement.

Dated: New York, New York
     August 4, 2023

Respectfully submitted,

By: */s/ Danielle Tarantolo*

Kathryn Lang
Regan Bailey
Carol Wong
JUSTICE IN AGING
1444 Eye Street NW, Suite 1100
Washington, DC 20005
Telephone: (202) 683-1997
Email: klang@justiceinaging.org
Email: rbailey@justiceinaging.org
Email: cwong@justiceinaging.org

    Danielle Tarantolo
    Michelle Spadafore
    Elizabeth Jois
    Jessica Ranucci
    NEW YORK LEGAL ASSISTANCE
    GROUP
    100 Pearl Street, 19th Floor
    New York, NY 10004
    Telephone:  (212) 613-5000
    Facsimile:  (212) 750-0820
    Email:  dtarantolo@nylag.org
    Email:  mspadafore@nylag.org
    Email:  ejois@nylag.org
    Email:  jranucci@nylag.org

    Sheila S. Boston
    Carmela T. Romeo
    ARNOLD & PORTER KAYE SCHOLER
    LLP
    250 West 55th Street
    New York, NY 10019-9710
    Telephone:  (212) 836-8000
    Email:  sheila.boston@arnoldporter.com
    Email:  carmela.romeo@arnoldporter.com