UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

LAQUANA CAMPOS, on behalf of herself and her
minor child, K.C.; TOSHA ADAMS; NORMAN
MARSH; and BETTI RODNYANSKAYA, individually
and on behalf of all persons similarly situated,

                                Plaintiffs,                        **No. 21 Civ. 5143 (RPK)(VMS)**

           -against-                        **DECLARATION OF**
                                          **DANIELLE TARANTOLO**

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                                Defendant.

------------------------------------------------------------------------x

Danielle Tarantolo hereby declares, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

    1.     I am an attorney duly admitted to practice in the Eastern District of New York.  I am the Director of the Special Litigation Unit at the New York Legal Assistance Group ("NYLAG"), which, along with Justice in Aging, and Arnold & Porter Kaye Scholer LLP, represents the Named Plaintiffs and putative class members (the "Class Members," and together, the "Class"[1]).

    2.     Plaintiffs have entered a class-wide Settlement Agreement with Defendant Kilolo Kijakazi, in her capacity as the Acting Commissioner of the Social Security Administration ("SSA," "the Agency," or "Defendant").

    3.     I make this declaration in support of Plaintiffs' motion for certification of a settlement class and approval of a class action settlement.

    4.     Attached hereto are true and correct copies of Exhibits 1-2.

---

[1] All capitalized terms have the same meaning as in the Stipulation of Settlement, attached as Exhibit 1.

1

5.    Attached as **Exhibit 1**, is the Stipulation of Settlement, dated June 23, 2023.

6.    Attached as **Exhibit 2**, for the Court's consideration, is a Proposed Order certifying the settlement class and approving this class action settlement.

**Settlement Negotiations**

7.    The settlement discussions in this matter, which began in January 2022, were highly contested and involved approximately a year and a half of arms-length negotiations. Specifically, from January 19, 2022 to October 4, 2022 the Parties extensively negotiated and reached an agreement in principle on the waiver relief to be provided to Class Members with overpayments during the March-September 2020 time period that were manually processed, excluding cases of fraud, similar fault, or misuse by a representative payee. From October 4, 2022 through June 7, 2023, the Parties extensively negotiated the relief to the remaining class members. By June 7, 2023, the Parties finalized a joint stipulation as to the agreed-upon relief for *all* Class members, an agreement regarding the process surrounding notice and guidance surrounding the relief, and on June 7, 2023, reached an agreement on attorneys' fees to be paid to Class Counsel by SSA. This stipulation was executed by the parties on June 23, 2023.

8.    The Parties exchanged dozens of written drafts of settlement proposals, demands and offers, draft stipulations, draft language, and settlement-related questions and answers. The Parties held dozens of telephone conferences to discuss contested aspects of the Settlement. The Parties attended many Court-led mediation sessions occurring over the span of over a year.

9.    There was no collusion between the parties or bad faith exercised in reaching this settlement. To the contrary, this Settlement was intensively and painstakingly negotiated at arms' length. Both sides were represented by experienced counsel with extensive experience handling complex class actions and cases regarding SSA benefits specifically.

2

10.    There are no agreements made in connection with the proposed Settlement other than the Settlement Agreement itself.

**Risks and Delay of Proceeding to Litigation**

11.    Proceeding to trial in this action would have involved extensive time and resources, and significant litigation risk in establishing Defendant's liability. Although Class Counsel believe that the Class's claims have merit, the Agency presented defenses in its Opposition to Plaintiffs' motion for preliminary injunction and would present additional arguments through dispositive motions and through trial if the litigation were to continue.

12.    This case is complex, involving administrative law and constitutional claims on behalf of over two million Class Members. Continuing litigation would likely require re-briefing and adjudication of Plaintiffs' (now-withdrawn) preliminary injunction motion and/or a motion to dismiss, and would certainly require document discovery, depositions, and then class certification and summary judgment briefing. Based on Class Counsel's experience with similar litigations, that process could take a few years a minimum and, potentially, the better part of a decade.

13.    The delay in continuing to litigate would have substantial negative ramifications for the Class, since, absent a preliminary injunction ordering otherwise, many Class Members would continue to be assessed overpayments of the type at issue in this case, and many Class Members would also be subject to recoupment on those overpayments on an ongoing basis.

14.    Plaintiffs spent months negotiating with Defendant to provide relief to the Class on as fast of a timeframe as the Agency could provide; Plaintiffs are persuaded that the Settlement Agreement provides relief to Class Members as quickly as is possible for the Agency.

**The Class**

15.    Defendant has estimated that this Class has 2.35 million members.

3

**Named Plaintiffs**

16.     Throughout this litigation, the Named Plaintiffs fully and openly cooperated with Class Counsel, including by attending meetings and interviews with counsel and providing records to counsel. Named Plaintiffs and Class Counsel also spent time reviewing the terms of the Settlement together so that Named Plaintiffs could offer their approval. They undertook these efforts despite having limited means and little familiarity with proceedings of this nature.

17.     All Named Plaintiffs approve of the settlement.

18.     Each Named Plaintiff, like all members of the class, is or was an SSI recipient who incurred an overpayment for one or more months in the period March 2020 through April 2023.  Each of the Named Plaintiffs incurred an overpayment for one or more months in the period March 2020 through September 2020 and did not obtain a waiver pursuant to the IFR. All were also assessed overpayments for one or more months in the period October 2020 through April 2023 that were not eligible for waiver under the terms of the IFR.

19.     The Named Plaintiffs will not be in any better position after the settlement than will absent class members.

**Class Counsel's Work**

20.     Class Counsel spent a tremendous amount of time and effort in this litigation. Class Counsel performed hundreds of hours of work on the litigation portion of this case. This litigation work included interviewing, collecting documents from, and providing information to Named Plaintiffs and other Class Members; conducting extensive research tremendous amount of factual and legal investigation to support the Class Members' claims; speaking with other advocates; developing legal claims; filing an exceedingly detailed Complaint; filing a robust preliminary injunction and provisional class certification motion and reply brief; and filing

4

numerous status reports.

**Class Counsel's Qualifications**

21.     Class Counsel are experienced in class action litigation in federal and state courts, including matters relating to public benefits. Class Counsel includes nationally-recognized experts on the provision of SSI benefits.

22.     NYLAG is a non-profit legal services organization that provides representation to low-income SSI beneficiaries, including Ms. Campos, K.C., Ms. Adams, Mr. Marsh, and Mrs. Rodnyanskaya, who would not otherwise have the means to obtain private counsel to assist them, and also has extensive experience in public assistance and class action litigation, including in the courts of New York State and in the United States District Courts in New York. A fee award to NYLAG would support ongoing work on behalf of individuals in need.

23.     Justice in Aging is a nonprofit legal advocacy firm representing low income older adults on issues relating to income stability and access to health care, with experience and expertise in public benefit programs relied upon by older adults, including Social Security law, and experience in class action litigation across the country, including Social Security matters. A fee award to Justice in Aging will support its legal advocacy on behalf of low income older adults.

24.     Arnold & Porter Kaye Scholer LLP, a law firm with extensive global reach, experience and deep knowledge across geographic, cultural, technological and ideological borders, has extensive experience in class-action cases, and has previously served as co-counsel with NYLAG and Justice in Aging in a case against SSA on behalf of SSI recipients.

**Attorneys' Fees**

25.     The requested award of attorneys' fees and costs does not negatively impact the Class Members in any respect.

26.     The stipulated fee award reflects only a small fraction of fee that would result from the total hours that Class Counsel spent on this matter.

27.     In the initial request that formed the basis for the negotiations leading to this stipulated fee award, Class Counsel requested fees for only two attorneys from each organization for each stage of the case, and excluded all other hours.

28.     There were ten primary timekeepers in this action, who performed the most intensive work. These attorneys performed more than 1,500 hours of work. Even at EAJA-mandated rates, which are significantly below market, the total lodestar for these primary timekeepers exceeds $365,000.

29.     This lodestar has been calculated only up through the negotiation of the stipulated fee amount and does not include the number of hours that Class Counsel has spent drafting this motion, nor any of the substantial time yet to be spent administering the settlement. This lodestar excludes hundreds of compensable hours expended by other attorneys and non-attorneys who also worked on this case.

30.     Class Counsel calculated the lodestar using an hourly rate of $233, which the rate provided by the Equal Access to Justice Act, adjusted for cost of living via the consumer price index (CPI-U), for New York for 2022. Because the hours expended in this case span from mid-2021 to mid-2023, Class Counsel used the 2022 rate as an appropriate average.

31.     If counsel's time were to be valued at market rates, the lodestar would be vastly higher. By way of example, if Arnold & Porter's time alone, for all timekeepers involved in prosecuting this action, were billed at that firm's standard rates, the bill would be over $750,000.

32.     Class Counsel is aware of no special circumstances that would make a fee award unjust.

6

33.    The stipulated award of $2,702.00 in costs comprises the filing fee, service of

process, couriers, duplicating, and pro hac vice admissions.


Dated: New York, New York
         August 4, 2023

                              Respectfully submitted,


                         By:  */s/ Danielle Tarantolo*
                              Danielle Tarantolo