# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
LAQUANA CAMPOS, on behalf of herself and her
minor child, K.C.; TOSHA ADAMS; NORMAN
MARSH; and BETTI RODNYANSKAYA,  individually
and on behalf of all persons similarly situated,

                       Plaintiffs,                  **No. 21-cv-05143 (RPK)(VMS)**

           -against-
KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                       Defendant.
----------------------------------------------------------------------x

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement ("**Settlement Agreement**") is entered into by and between

LaQuana Campos, on behalf of herself and her minor child, K.C., Tosha Adams, Norman Marsh,

and Betti Rodnyanskaya ("Named Plaintiffs"), individually and on behalf of the putative class

they represent, (collectively, "**Plaintiffs**") and Defendant Social Security Administration through

Kilolo Kijakazi, in her official capacity as Acting Commissioner of the Social Security

Administration (together with Plaintiffs, the "**Parties**").

WHEREAS, Named Plaintiffs LaQuana Campos, on behalf of herself and her minor

child, K.C., Tosha Adams, Norman Marsh, and Betti Rodnyanskaya, filed the above-captioned

putative class action ("this Action") on September 15, 2021, asserting claims under 28 U.S.C. §

1361, the Administrative Procedure Act, the Due Process Clause of the Fifth Amendment to the

U.S. Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the U.S.

Constitution seeking equitable relief;

*Campos, et al. v. Kijakazi*, No. 21-cv-5143 (Kovner, J.) (Scanlon, M.J.)
Stipulation of Settlement

WHEREAS, the Plaintiffs filed their fully-briefed motion for a preliminary injunction and provisional class certification on March 28, 2022, and withdrew this motion without prejudice on October 13, 2022 due to the Parties' agreement on the key terms of a settlement in principle;

WHEREAS, the Parties desire to settle this matter without the need for further litigation; and

WHEREAS, the Parties have agreed to the entry of this Settlement Agreement, subject to the Court's approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure;

IT IS NOW HEREBY STIPULATED AND AGREED, by and among the Parties to this action, and IT IS NOW HEREBY ORDERED AND DECREED, by this Court, as follows:

1. **Definitions.** The following definitions apply for purposes of this Settlement Agreement and are incorporated herein as material to the Settlement Agreement:

   a. **Automated Processes** shall be interpreted in a manner consistent with the term "automated processes" in the Interim Final Rule, Waiver of Recovery of Certain Overpayment Debts Accruing During the COVID-19 Pandemic Period (Fed. Reg. Vol. 85. No. 167, 52909-52915, Aug 27, 2020), including but not limited to "automated processes such as computer interfaces with the Department of Veteran Affairs (VA) and (for dually entitled SSI recipients) Social Security benefit systems."

   b. **Class Counsel** means Plaintiffs' attorneys of record in the above-captioned action, including the New York Legal Assistance Group, Arnold & Porter Kaye Scholer, LLP, and Justice in Aging.

2

*Campos, et al. v. Kijakazi*, No. 21-cv-5143 (Kovner, J.) (Scanlon, M.J.)
**Stipulation of Settlement**

c. **Class Member(s)** means, unless otherwise specified, Named Plaintiffs and members of the Settlement Class.

d. **Court** means the United States District Court for the Eastern District of New York.

e. **Defendant** means the Social Security Administration through Kilolo Kijakazi, in her official capacity as Acting Commissioner of the Social Security Administration, also referred to herein as the Agency.

f. **Final Approval Order** means an Order of the Court approving the Settlement Agreement pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure and dismissing this Action with prejudice.

g. **Final Settlement Date** means the date on which the time to file or notice any appeal from the Final Approval Order expires; or the date of final affirmance of the Final Approval Order in any appeals therefrom, whichever is later.

h. **March-September 2020 Manual SSI Overpayments** means SSI overpayment debts incurred for the period from March 1, 2020 through September 30, 2020 that were not identified through Automated Processes.

i. **Named Plaintiffs** means Plaintiffs LaQuana Campos, on behalf of herself and minor child K.C., Tosha Adams, Norman Marsh, and Betti Rodnyanskaya.

j. **Overpayment** has the meaning set forth in 20 C.F.R. § 416.537.

k. **Parties** means Plaintiffs and Defendant.

l. **Plaintiffs** means the Named Plaintiffs and the other members of the Settlement Class. "Plaintiffs" and "Class Member(s)" have the same meaning and can be used interchangeably.

m. **Settlement Class** means the class of Plaintiffs as agreed upon by the Parties, described in paragraph 5(a) *infra*.

n. **SSI** means Supplemental Security Income under Title XVI of the Social Security Act.

o. **Waive** (when used in connection with an SSI Overpayment) means SSA will waive adjustment or recovery of an SSI Overpayment, and the person's record will reflect that collection has been terminated.

2. **Relief for March-September 2020 Manual SSI Overpayments.**

a. **Waiver:** Defendant will Waive all March-September 2020 Manual SSI Overpayments, without requiring any individual to submit any separate request for waiver, except that Defendant will not be obligated to Waive:

   i. Any March-September 2020 Manual SSI Overpayments resulting from fraud or similar fault or involving misuse of benefits by a representative payee; or

   ii. Any March-September 2020 Manual SSI Overpayments where the overpayment determination has been reversed; or

   iii. Any March-September 2020 Manual SSI Overpayments that have already been Waived.

b. **Return of Recovered Funds for March-September 2020 Manual SSI Overpayments:** Where an SSI Overpayment has been Waived pursuant to paragraph 2(a) and the overpaid individual has already repaid all or part of the Waived Overpayment to the Agency, the amount repaid will be deemed an underpayment. The Agency may issue the underpayment to the individual if

*Campos, et al. v. Kijakazi*, No. 21-cv-5143 (Kovner, J.) (Scanlon, M.J.)
Stipulation of Settlement

appropriate under, and in accordance with, all applicable laws, regulations, and Agency policy, including but not limited to 20 C.F.R. §§ 416.538, 416.542, 416.543, 416.545, and 416.546 and POMS SI 02101.002 and SI 02101.003. In cases where a barrier exists to issuing the underpayment—including but not limited to cases in which the Agency is unable to locate an individual, the Agency does not have current bank account information for an individual, the individual's account is in suspension status, *etc.*—the Agency shall not be obligated to issue an underpayment pursuant to this Settlement Agreement but shall nevertheless endeavor to issue the underpayment to the extent doing so is consistent with all applicable laws, regulations, and Agency policy.

c. **Timeline:** To the extent that the relief set forth in paragraph 2(a) (Waiver) can be accomplished by SSA's Systems component writing and applying code within SSA's electronic benefits programs, Defendant shall provide such relief by no later than 18 months after Final Settlement Date. The Agency expects that, due to technological limitations, its Systems component will not be able to effectuate all relief under paragraph 2(a) of this Settlement Agreement in the manner described in the previous sentence but, rather, assistance from SSA's Operations component will be needed to effectuate waivers and/or issuance of underpayments under this Settlement Agreement. To the extent that any Overpayment waivers will be identified and/or effectuated with the assistance of SSA's Operations component, such waivers will be effectuated as soon as practicable after SSA's Systems component has

*Campos, et al. v. Kijakazi*, No. 21-cv-5143 (Kovner, J.) (Scanlon, M.J.)
Stipulation of Settlement

completed its portion of the work as described in the first sentence of this paragraph. With respect to March-September 2020 Manual SSI Overpayments that have not yet been assessed and that will be assessed in the future, if they are eligible for relief under Paragraph 2(a) of this Settlement Agreement, the Agency will provide such relief as soon as practicable after identifying the overpayment. Defendant generally will issue underpayments as described in Paragraph 2(b) (Return of Recovered Funds) by no later than four (4) weeks after the individual receives the relief set forth in Paragraph 2(a) (Waiver) in cases where the issuance of the underpayment can be effectuated by SSA's Systems component, to the extent consistent with all applicable laws, regulations, and policy; and as early as practicable after the individual receives the relief set forth in Paragraph 2(a) (Waiver) in cases where the assistance of SSA's Operations component is needed or where any applicable law, regulation, or policy requires all or part of the payment to be made later.

d. **Future Assessments:** The Agency may assess March-September 2020 Manual SSI Overpayments in the future only if such future assessment is consistent with applicable laws, regulations, and Agency policy. If such March-September 2020 Manual SSI Overpayments assessed in the future are eligible for relief under paragraph 2(a) of this Settlement Agreement, the Agency shall provide such relief.

e. **Notice:** The Agency will send a one-time notice to Plaintiffs who have SSI Overpayments that are eligible for waiver under Paragraph 2(a) of this

Settlement Agreement. This notice would inform the individuals that March-September 2020 Manual SSI Overpayments are being waived (subject to the exclusions set forth in Paragraph 2(a) of this Settlement Agreement) and, where applicable, an underpayment may be issued to return already-recovered funds if appropriate under and in accordance with applicable laws, regulations, and Agency policy. A draft of this notice shall be provided to Class Counsel, after which Class Counsel will have two (2) weeks to provide recommendations for modification, if any, to the Agency. The Agency shall consider such proposed modifications but the contents of the notice will rest with the Agency and include what is required by this Settlement Agreement. At the Agency's discretion, the contents of the notice may be the same Notice as provided by Paragraph 3(a) *infra*.

3. **Relief for October 2020-April 2023 SSI Overpayments and for March 2020–September 2020 SSI Overpayments Identified through Automated Processes**

   a. **Notice**: For Plaintiffs who have SSI Overpayments that are not eligible for waiver under Paragraph 2(a) of this Settlement Agreement and that have not already been reversed or Waived, the Agency will send a one-time notice to individuals with SSI Overpayments incurred between March 2020 and April 2023 (assessed and identified as of approximately two (2) to four (4) weeks before the mailing of the Notice is estimated to begin). This notice would: (a) inform the individuals of their right to request a waiver, and explain the available methods of doing so, including information on how to access Form SSA-632BK (Request for Waiver of Overpayment Recovery) on the Agency's

*Campos, et al. v. Kijakazi*, No. 21-cv-5143 (Kovner, J.) (Scanlon, M.J.)
**Stipulation of Settlement**

website; (b) explain that they can seek waiver of any overpayments; (c) highlight certain COVID-19-related factors that may be relevant to the Agency in adjudicating waiver requests; and (d) explain or provide instructions to access online the Agency's policy with respect to waivers requested where individuals allege they were not at fault because of those circumstances, consistent with Paragraph 3(b) below.  A draft of this notice shall be provided to Class Counsel, after which Class Counsel will have two (2) weeks to provide recommendations for modification, if any, to the Agency.  The Agency shall consider such proposed modifications but the contents of the notice will rest with the Agency and include what is required by this Settlement Agreement.  At the Agency's discretion, the contents of the notice may be the same Notice as provided by Paragraph 2(e) *supra*.

b. **Administrative Guidance**: SSA will issue initial internal guidance reminding technicians how to adjudicate waiver requests for SSI Overpayments since March 2020 and directing them to consider specific COVID-19-related circumstances alleged by an individual requesting waiver that could support a finding that an individual is without fault in causing the Overpayment when the Agency considers a waiver request.  The specific COVID-19 related circumstances that may prevent an individual from complying with the SSI reporting requirements may include, for example, (1) COVID-19 related failed attempts to contact the Agency, including inability to visit a field office, inability to access mail services, and inability to access transportation; (2) government-imposed COVID-19 travel restrictions; (3) overpaid individual's

COVID-19 related serious illness; (4) child- or family-care changes due to COVID-19 stay-at-home orders or school-at-home requirements, (5) COVID-19 related death or serious illness of the overpaid person's representative payee; and (6) COVID-19 related death or serious illness in the overpaid individual's immediate family.  SSA will issue a revised version of the guidance described in this paragraph prior to the issuance of the Notice, which will provide technicians with information about how to process inquiries about the Notice, in addition to the above information about considering COVID-19 related circumstances.  The revised guidance will remind technicians that, if a waiver is granted, an underpayment may be issued to return already-recovered funds if appropriate under, and in accordance with, all applicable laws, regulations, and Agency policy, including but not limited to 20 C.F.R. §§ 416.538, 416.542, 416.543, 416.545, and 416.546 and POMS SI 02101.002 and SI 02101.003.  Prior to the Agency's anticipated date of issuance of the initial guidance, a draft of this guidance shall be provided to Class Counsel, after which Class Counsel will have two (2) weeks to provide recommendations for modification, if any, to the Agency.  The Agency shall consider such proposed modifications but the contents of the guidance will rest with the Agency and include what is required by this Settlement Agreement.  The guidance or revised guidance shall be in effect for at least two years after the Notices are sent in accordance with Paragraph 3(a).

c. **Messaging and/or Training:** Defendant shall provide messaging and/or training relating to the administrative guidance described in paragraph 3(b) to

relevant employees in Defendant's field offices, regional offices, and hearing offices in a manner to be determined by Defendant and within a reasonable amount of time  from the issuance of the initial administrative guidance; and within a reasonable amount of time before the issuance of the Notice.

d.  **Timeline:** Defendant shall begin mailing the notices described in paragraph 3(a) within approximately 13.5 months after the Final Settlement Date and complete mailing by approximately 16 months after the Final Settlement Date, except that, if Plaintiffs request any modifications to the draft Notice, then this time period shall be extended by one (1) month to allow Defendant time to consider whether and how to incorporate Plaintiffs' suggestions.  Defendant shall provide the relief set forth in paragraph 3(b) (initial Administrative Guidance) by eight (8) months after this Settlement Agreement is fully executed or within three (3) months after the Court's Final Approval or within one (1) week after the Final Settlement Date, whichever is later.  Defendant shall issue revised guidance before the anticipated date of the issuance of the Notice pursuant to Paragraph 3(a).

4.  **Timeline Adjustments:**

a.  If any significant adjustments to the timelines set forth in Paragraphs 2-3 are needed due to unanticipated circumstances, Defendant shall notify Class Counsel, and the Parties may mutually agree to adjust the timelines or Plaintiffs may follow the dispute resolution procedures set forth in Paragraph 10 to attempt to resolve the issue.  If, due to circumstances unforeseen, unanticipated, or out of Defendant's control, including but not limited to

exacerbations of the current public health emergency or a new pandemic, natural disaster, or supply-chain disruptions, Defendant is unable to meet timelines set forth in this Agreement, not meeting any such timeline shall not constitute a breach of this Agreement.

b. Should any individual(s) appeal the Court's Final Approval Order of this Settlement Agreement, as discussed in Paragraph 5, all timelines set forth in Paragraphs 2 and 3, along with the reporting timelines in Paragraph 7, shall be tolled upon filing of the Notice of Appeal and shall not resume until the appellate court has entered judgment confirming this Settlement Agreement and the deadline to appeal the appellate court's judgment has passed without further appeal.

5. **Class Certification and Class Settlement Approval**

a. **Class Certification:** For purposes of this Settlement Agreement, the Parties agree to certification of a class under Federal Rule of Civil Procedure 23(b)(2) consisting of:

    i. all individuals with a March-September 2020 Manual SSI Overpayment, and

    ii. all individuals with an SSI Overpayment debt incurred for any months between March 2020 and September 2020 that was identified through automated processes, and all individuals with an SSI overpayment debt incurred for any months between October 2020 and April 2023.

b. **Class Representatives**. Subject to Court approval, the Parties agree to the appointment of LaQuana Campos, on behalf of herself and her minor child,

K.C., Tosha Adams, Norman Marsh, and Betti Rodnyanskaya as the Class

Representatives.

c. **Class Counsel.** Subject to Court approval, the Parties agree to the

appointment of the New York Legal Assistance Group, Arnold & Porter Kaye

Scholer, LLP, and Justice in Aging as Class Counsel.

d.  **Approval of Settlement Agreement:** Class Counsel will make a motion for

the Court to approve this Settlement Agreement.  The Parties shall act in good

faith in seeking the Court's approval of this Settlement Agreement.

e. **Approval Prior to Class Notice:** The Parties agree that it is in the best

interests of the Class Members to seek final Court approval for this settlement

agreement pursuant to Fed. R. Civ. P. 23 without prior notice to the Class

Members.  Promptly following the execution of this Settlement Agreement,

Class Counsel will submit the fully executed Settlement Agreement to the

Court and move, with Defendant's consent, for immediate entry of the Final

Approval Order.  In the event that the Court declines to grant the Parties'

request for final approval without prior notice to the Class Members but

would otherwise grant preliminary approval to the Settlement, the Parties shall

meet and confer in good faith to seek to determine whether they can agree to

modify the Settlement Agreement in a manner that would accommodate the

Court's conditions.

6. **Release.**

a. Except as described in Paragraph 6(b) below, Plaintiffs, on their own behalf,

and on behalf of their representatives, assignees, heirs, executors, family

members, beneficiaries, administrators, successors, and anyone acting, or

claiming to act on their behalf, hereby release and forever discharge, and hold

harmless, the United States of America, its agencies, officers, and employees

including the Agency and its past and present commissioners, officers,

employees, agents, officials, contractors, and representatives (collectively the

"Released Parties"), from, and are hereby forever barred and precluded from

bringing, filing or prosecuting, any and all claims and causes of action, known

and unknown, asserted and unasserted, direct and indirect, and of any kind,

nature or description whatsoever, arising out of the facts, claims or allegations

set forth in the complaint filed in this action or that could have been brought

in this action.  Plaintiffs shall be forever barred and enjoined from bringing,

filing or prosecuting any claim against any of the Released Parties unless it

falls outside the scope of this release.

b. Nothing in this Settlement Agreement shall limit, restrict, or release any Class

Member's right to request individual relief in connection with any

Overpayment, including, but not limited to, relief sought through a request for

waiver or reconsideration or any administrative or judicial appeal thereof,

consistent with applicable laws, regulations, and Agency policy.

7. **Reporting of Progress Toward, and Completion of, Settlement Obligations.**

a. Between the Final Settlement Date and the date on which all reports under

paragraph 7(b) have been provided, Defendant shall provide quarterly reports

to Class Counsel generally describing the steps taken by Defendant toward

providing relief under paragraphs 2 and 3. These steps may include, but are

13

not limited to, drafting the Notice and guidance, internal approval of the Notice and guidance, identification of class members, identification of and contracting with the vendor for Notice printing, coding by SSA's Systems component, issuance of some waivers by SSA's Systems component, issuance of some waivers by SSA's Operations component, and issuance of some underpayments. Defendant shall also be available for a teleconference within thirty (30) days following each quarterly report, at Class Counsel's request, at a date and time to be mutually agreed upon.

b. Defendant shall notify Class Counsel of completion of its settlement obligations as follows:

   i. By 120 days after relief has been completed under paragraph 2(a) (Waiver) in accordance with the first sentence of paragraph 2(c) (Timeline), Defendant will notify Class Counsel and will provide the approximate number of waivers.  By 120 days after relief under paragraph 2(a) (Waiver) in accordance with the second and third sentences of paragraph 2(c) (Timeline), has been completed, with the exception of any overpayments not yet identified or assessed at that time, Defendant will notify Class Counsel that the relief has been completed and will provide the approximate number of waivers.

   ii. By 120 days after notices have been sent in accordance with paragraph 3(a), Defendant will provide a report to Class Counsel that includes the approximate number of notices sent pursuant to paragraph 3(a).

*Campos, et al. v. Kijakazi*, No. 21-cv-5143 (Kovner, J.) (Scanlon, M.J.)
**Stipulation of Settlement**

    iii.   By 120 days after any dates on which Defendant has issued or revised guidance in accordance with paragraph 3(b), Defendant will provide a report to Class Counsel that includes a copy of the guidance issued and a description of the method and manner in which that guidance was disseminated.

    iv.   By 120 days after Defendant provides relief under paragraph 3(c), Defendant will provide a report to Class Counsel that includes a description of the trainings and/or messaging that has been provided and a description of the groups of employees to whom it was provided.

  c.  Defendant shall provide paragraph 7 reports to Class Counsel via email to dtarantolo@nylag.org, carmela.romeo@arnoldporter.com, and rbailey@justiceinaging.org  (or their designee(s)).

8. **Consent to Magistrate Jurisdiction.** The Parties consent to the jurisdiction of Magistrate Judge Vera Scanlon over approval of the Settlement Agreement. Consistent with Paragraphs 9 and 13, the parties' consent to Magistrate Judge Scanlon's jurisdiction shall not be construed or cited in this action or in any other case or action as a waiver of any fact or defense, jurisdictional or non-jurisdictional, or as an admission of or evidence of admission of any issue of fact or law.

9. **Dismissal and Retention of Jurisdiction.**

  a.  As of the Final Settlement Date, this action shall be dismissed with prejudice subject to the terms of the Court's Final Approval Order; and

  b.  Magistrate Judge Scanlon shall retain jurisdiction for the purpose of enforcing the terms of this Settlement Agreement, subject to Paragraph 10 below.

Consistent with Paragraphs 8 and 13, the parties' agreement that Magistrate Judge Scanlon shall retain jurisdiction over this Settlement Agreement shall not be construed or cited in this action or in any other case or action as a waiver of any fact or defense, jurisdictional or non-jurisdictional, or as an admission of or evidence of admission of any issue of fact or law.  The parties further agree that the court's jurisdiction over this Settlement Agreement shall terminate one (1) year after Defendant has provided Plaintiffs with the reports of completion of its settlement obligations as detailed in Paragraph 7(b).

10. **Dispute Resolution – Material Breach.**  The Parties agree that any alleged material breach of this Settlement Agreement shall be resolved via the mechanisms described in this Section. The mechanisms described in this Section are the exclusive process for seeking to remedy any Party's alleged material violation of this Settlement Agreement.  Individual Allegations of Entitlement to Relief under the Settlement Agreement described in Paragraph 11 below shall not constitute a material breach of this Settlement Agreement.

   a. In the event that Class Counsel asserts that Defendant has materially breached this Settlement Agreement, Class Counsel shall provide Defendant with written notice that describes the alleged breach or violation with particularity. Such notice must include the following: (a) an identification of the term(s) that has allegedly been violated; (b) a description of the specific errors or omissions upon which the alleged violation is based; and (c) a description of the corrective action sought.  Class Counsel must send notices of alleged breach in a manner that protects personally identifiable information (PII),

including but not limited to claimants' names and Social Security numbers, such as by encryption.

b. In the event that Class Counsel asserts that Defendant has materially breached any aspect of this Settlement Agreement, Class Counsel shall serve the notice of the alleged breach on SSA within a reasonable time, but not to exceed sixty (60) days after Class Counsel first becomes aware of a potential violation. Any allegation of a breach pursuant to Paragraph 2(a) or Paragraph 2(b) of this Settlement Agreement that does not fall within Paragraph 11 below must be made within one (1) year after Defendant provides Class Counsel with the compliance report described in Paragraph 7(b) of this Settlement Agreement.

c. Class Counsel shall provide the notice described in this Section to: Defendant by e-mail to SSA.OGC.Employment.Litigation@ssa.gov and USANYE-CamposLitigation@usdoj.gov.   Class Counsel shall include in the subject line of such email(s) the phrase "Class Action – Breach Assertion."

d. The Parties shall confer to attempt to resolve the issue raised in the notice. The Parties shall make their best efforts to resolve any and all allegations of a material breach or violation without the Court's involvement.  If requested to do so, Class Counsel shall provide to Defendant any and all reasonably available, non-privileged information that supports the alleged material breach.

e. If the Responding Party fails to respond to a notice of a material breach or violation within thirty (30) days, or the Parties otherwise cannot resolve the issue or issues raised in that notice within sixty (60) days, the party alleging

breach shall request, no sooner than seventy-five (75) days after the date on which the notice of a material breach was served, and no later than one hundred twenty (120) days after the date on which the notice of a material breach was served, a mediation conference with the Magistrate Judge then assigned to mediate disputes under this provision of this Settlement Agreement, or, if no Magistrate Judge is assigned at that time, with whichever Magistrate Judge is assigned by the Court following a request for such assignment by the party alleging breach. The party alleging breach shall serve its request for a mediation conference on the Responding Party at the time the request is made.  The Responding Party may at any time prior to sixty (60) days after the date on which the notice was served take the measures to cure the alleged violation that were identified by the Party alleging breach in their notice, in which case no request for mediation conference may be made.

f.  If the mediation described in paragraph 10(e) above does not successfully resolve the issue, no later than sixty (60) days after the date of the mediation conference, the Party alleging breach may request judicial enforcement of the provision that has allegedly been violated by filing a motion for enforcement with the Court.  The Responding Party may at any time prior to thirty (30) days after the date of the mediation conference take the measures to cure the alleged violation that were identified by the Party alleging breach in its notice of breach, in which case no request for judicial enforcement may be brought. The Parties agree that in the event the Court decides any motion for enforcement in favor of the Party alleging breach, the remedy shall be limited

18

*Campos, et al. v. Kijakazi*, No. 21-cv-5143 (Kovner, J.) (Scanlon, M.J.)
**Stipulation of Settlement**

to requiring the Responding Party to comply with whichever provision(s) the Court finds there has been a lack of compliance. The Parties agree that any such motion for enforcement shall not include a request that any party or nonparty be held in contempt.

g. An alleged error in connection with an individual Class Member's Overpayment is not considered a breach . Alleged individual errors shall be resolved via the mechanisms described in Paragraph 11.

11. **Dispute Resolution – Individual Allegations of Entitlement to Relief under the Settlement Agreement.** The Parties agree that any allegation that an individual Class Member did not receive a waiver or other relief under the Settlement Agreement as to an individual Class Member shall be resolved via the mechanisms described in this Section.

a. Any Class Member may assert that the Class Member should have been granted a waiver pursuant to this Settlement Agreement by submitting a waiver request to the Agency through the Agency's existing waiver request procedures and/or as part of the Class Member's administrative appeal or judicial appeal of a denial of their waiver request. Such Class Member shall make best efforts to provide to Defendant all information and documentation that the Class Member is able to provide in support of the allegation that they should have been granted a waiver. Defendant agrees that, in adjudicating any such request or appeal, it will consider the relief to which the Class Member may be entitled under Paragraphs 2 of this Settlement Agreement, and will provide such relief if the Class Member is determined to be entitled to it.

19

*Campos, et al. v. Kijakazi*, No. 21-cv-5143 (Kovner, J.) (Scanlon, M.J.)
**Stipulation of Settlement**

b. In the event that Class Counsel asserts that an individual Class Member should have received relief pursuant to this Settlement Agreement, Class Counsel shall provide Defendant with written notice that describes the assertion with particularity, including but not limited to: (a) an identification of the term(s) of the Settlement Agreement under which relief is sought; (b) a description of any specific alleged errors or omissions upon which the assertion is based; and (c) a description of the relief sought. In addition, if alleging that an individual should have received, but did not receive, a Waiver pursuant to Paragraph 2(a) or an underpayment pursuant to Paragraph 2(b) of this Settlement Agreement, Class Counsel shall also provide Defendant with a copy of the overpayment notice received by the individual (or, if the individual cannot locate a copy of the overpayment notice, Class Counsel shall provide Defendant with the name and Social Security Number of the individual, and shall make best efforts to identify the date(s) and amount(s) of the overpayment at issue). In addition, if alleging that an individual should have received, but did not receive, the Notice provided for in Paragraph 3(a) of this Agreement, Class Counsel shall provide Defendant with a copy of the overpayment notice received by the individual (or, if the individual cannot locate a copy of the overpayment notice, the name and Social Security Number of the individual and the individual's current mailing address). Class Counsel must send notices described in this paragraph in a manner that protects personally identifiable information (PII), including, but not limited to, claimants' names and Social Security numbers, such as by encryption.

*Campos, et al. v. Kijakazi*, No. 21-cv-5143 (Kovner, J.) (Scanlon, M.J.)
**Stipulation of Settlement**

   c.   The Parties shall work in good faith to resolve any allegation by Class Counsel that an individual Class Member should have received relief under this Settlement Agreement.  In no event shall Class Counsel move for enforcement of this Settlement Agreement, seek to nullify this Settlement Agreement, or seek to reinstate the claims at issue in this Action on the sole basis that Defendant has allegedly failed to provide relief to individual Class Member(s).

12. **Attorneys' Fees.** The Parties agree that the amount of $268,000.00 (two hundred sixty-eight thousand dollars and zero cents) as attorneys' fees and $2,702.00 (two thousand seven hundred and two dollars and zero cents) as costs will be awarded to Class Counsel, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, and will be paid to New York Legal Assistance Group (NYLAG).  NYLAG shall be responsible for any distribution to the other entities comprising Class Counsel.  Those funds are the only funds to be paid by Defendant or the United States as attorneys' fees and/or costs under this Settlement Agreement or otherwise in connection with this Action. Within seven (7) calendar days of the Final Settlement Date, Class Counsel shall notify Defendant's counsel in writing of the identity of the account and bank designated for the deposit of funds to be paid as attorneys' fees and costs, and will provide any necessary tax reporting information as well as all information necessary and appropriate to direct any and all deposits provided for in this Settlement Agreement.

13. **Non-Admission.** This Settlement Agreement shall not constitute an admission of liability or fault on the part of Defendant or the United States or their agents, servants,

officers, or employees, and is entered into by the Parties for the sole purpose of compromising disputed claims.  Nothing in this Settlement Agreement or in any negotiations or proceedings in connection herewith shall be offered as, received as, or deemed to be an admission by either party as to any issue of law or fact or evidence or admission by either party as to any issue of law or fact.  Neither party shall seek to introduce as evidence any representation or communication made during the negotiation or proceedings connected with this Settlement Agreement.  No provision of this Settlement Agreement shall be construed or cited in this action or in any other case or action as a waiver of any fact or defense, jurisdictional or non-jurisdictional, that Defendant or the Agency may have in that case or action.

14. **Entire Settlement Agreement.**  The Settlement Agreement represents the entirety of the Parties' commitments with regard to settlement.  The Parties agree that any other prior or contemporaneous representations or understandings not explicitly contained in this Settlement Agreement, whether written or oral, are of no further legal or equitable force of effect.

15. **Headings.**  The headings herein are for the purpose of convenience only and are not intended to have legal effect.

16. **Binding Agreement.**  Upon entry of the Final Approval Order and dismissal of this Action with prejudice by the Court, this Settlement Agreement is final and binding upon the Parties, their successors, and their assigns.

17. **Court Modifications and Nullification.** In the event that the Court or any court, including in connection with any appeal, does not approve this Settlement Agreement, or if the Court or any court, including in connection with any appeal,

conditions its approval on any changes to the Settlement Agreement, the Parties shall

meet and confer in good faith to determine whether to agree upon a modified

Settlement Agreement.  If they are unable to do so, this Settlement Agreement shall

become null and void.

18. **Unified Agreement.** It is understood by the Parties that this Settlement Agreement is

a unified agreement and, if any provision hereof is held invalid or unenforceable,

such holding shall invalidate and render unenforceable all other provisions hereof.

Notwithstanding, the Parties may agree to amend the Agreement in a writing signed

by both Parties and approved by the Court.


[This space intentionally left blank]

*Campos, et al. v. Kijakazi*, **No. 21-cv-5143 (Kovner, J.) (Scanlon, M.J.)**
**Stipulation of Settlement**

Agreed to as of this 23rd day of June, 2023.

NEW YORK LEGAL ASSISTANCE GROUP
100 Pearl Street, 19th Floor
New York, New York 10004


By: _____
    DANIELLE TARANTOLO
    ELIZABETH JOIS
    MICHELLE SPADAFORE
    JESSICA RANUCCI
    Of Counsel
    (212) 613-6551
    dtarantolo@nylag.org

JUSTICE IN AGING
1444 Eye Street NW, Suite 1100
Washington, District of Columbia 20005


By: _____
    REGAN BAILEY
    KATHRYN LANG
    CAROL WONG
    (202) 683-1997
    rbailey@justiceinaging.org

ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019


By: _____
    CARMELA T. ROMEO
    SHEILA S. BOSTON
    (212) 836-8000
    carmela.romeo@arnoldporter.com

*Counsel for Plaintiffs*

BREON PEACE
United States Attorney
Eastern District of New York


By: _____
    DAVID A. COOPER
    DARA OLDS
    Assistant U.S. Attorneys
    (718) 254-6228/6148
    david.cooper4@usdoj.gov
    dara.olds@usdoj.gov

*Counsel for Defendant*