UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

LAQUANA CAMPOS, on behalf of herself and  :
her minor child, K.C.; TOSHA ADAM;        :
NORMAN MARSH; and BETTI                :
RODNYANSKAYA, individually and on behalf :
of all persons similarly situated,          :

                                :

               Plaintiffs,      :

                                :

      -against-             :

                                :

KILOLO KIJAKAZI, Acting Commissioner of   :
Social Security,                     :

                                :

              Defendant.     :

                                :

------------------------------------------------------------ X

**MEMORANDUM**

No. 21 Civ. 5143 (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

## I.    INTRODUCTION

      Plaintiffs LaQuana Campos (on behalf of herself and her minor child, K.C.), Tosha

Adams, Norman Marsh, and Betti Rodnyanskaya (together, "Named Plaintiffs"), brought a

Motion for Certification of Settlement Class and Final Approval of Class Action on behalf

of themselves and a class of all current and future recipients of Supplemental Security

Income ("SSI") ("Class Members") (together, "Plaintiffs").  Motion, ECF No. 53.  With the

consent of Defendant Kilolo Kijakazi ("Defendant") (collectivity with Plaintiffs, the

"Parties") in Defendant's capacity as the Acting Commissioner of the Social Security

Administration (the "SSA" or the "Agency"), Plaintiffs ask for this Court's final approval of

the Parties' proposed Stipulation of Settlement (the "Settlement Agreement" or the

"Agreement"), ECF No. 55-1, and related relief set forth in Named Plaintiffs' Memorandum

of Law in Support of a Motion for Certification of Settlement Class and Final Approval of

Class Action.  Memorandum of Law, ECF No. 54.

The Parties ask that this Court: (1) certify a settlement class consisting of: (i) all individuals with a March-September 2020 Manual SSI Overpayment ("SSI Overpayment"); (ii) all individuals with an SSI Overpayment debt incurred for any months between March 2020 and September 2020 that was identified through automated processes; and (iii) all individuals with an SSI Overpayment debt incurred for any months between October 2020 and April 2023; (2) appoint the New York Legal Assistance Group ("NYLAG"), Justice in Aging, and Arnold & Porter Kaye Scholer LLP ("Arnold & Porter ") as class counsel ("Class Counsel") and Named Plaintiffs as class representatives ("Class Representatives"); (3) approve the Parties' Settlement Agreement without requiring a pre-approval notice being provided to Class Members; and (4) grant Named Plaintiffs $268,000 in attorneys' fees and $2,702 in costs to Class Counsel, as stipulated in the Settlement Agreement.  ECF No. 54 at 45-46.

Under the Settlement Agreement, Defendant agrees to waive all March-September 2020 Manual SSI Overpayments with very limited exceptions.  Settlement Agreement ¶ 2(a), i-iii; see Memorandum of Law at 1, 9, 11 n.5, ECF No. 54.  These waivers will occur no later than 18 months after the final settlement date.  Settlement Agreement ¶ 2(c).  The Agency will not require individual Class Members to take specific actions to benefit from these waivers, and the SSA will return any amounts previously "recouped" by beneficiaries where permitted by law, regulation and Agency policy.  Id. ¶ 2(a).  All Class Members who were assessed an SSI Overpayment incurred between October 2020 and April 2023 (the end of the COVID-19 national emergency) and all Class Members who were assessed an SSI Overpayment incurred from March 2020 to September 2020 and identified through automated processes (as opposed to manually processed overpayments) will receive relief in

the form of new administrative guidance followed by a notice to be sent to each Class Member.  Id. ¶ 3.

Having considered all submissions and arguments before it, the Court finds that the Settlement Agreement is fair, reasonable and adequate.  For the reasons discussed below, the Court approves the Settlement Agreement without requiring a pre-approval fair hearing or notice to absent Class Members, appoints Class Counsel as requested, and grants Named Plaintiffs' request for attorneys' fees and costs to Class Counsel other than the pro hac vice fees.

## II.    BACKGROUND

The following facts are drawn from the Complaint and are accepted as true solely for the purposes of this motion.  Complaint, ECF No. 1.  The Federal SSI program provides income support to low-income individuals of ages 65 or older or who are blind or disabled.  Id. ¶ 24; 42 U.S.C. § 1381.  To benefit from SSI, these individuals must meet strict income and resource limits each month, and they must promptly report any changes in their finances to the SSA.  Unreported income change may prompt the SSA to recover SSI benefits that the Agency believes it overpaid to those recipients.  Id. ¶ 5.

In March 2020, following the Government's National Emergency Proclamation in response to the first outbreak of the COVID-19 pandemic, the SSA closed its field offices, impeding SSI recipients' ability to report income changes to the SSA.  In August 2020, recognizing the difficulties created by the ongoing pandemic, the SSA issued an interim final rule entitled Waiver of Recovery of Certain Overpayment Debts Accruing during the COVID-19 Pandemic Period, Fed. Reg. Vol. 85. No. 167, 52909-52915, Aug 27, 2020 (the "Rule" or the "IFR").  Id. ¶¶ 4, 9.

In their Complaint, Named Plaintiffs contend that while the IFR intended to bring relief to SSI recipients, the Rule "contains numerous arbitrary limitations on when a recipient qualifies for the streamlined waiver" and that the "arbitrary limitations on the IFR's applicability have resulted in many SSI recipients being assessed overpayments and thus experiencing unfair and improper benefit reductions, causing substantial harm." Id. ¶ 4.

### A. The Parties' Settlement Agreement

Following nearly two years of litigation and negotiations, the Parties filed their proposed Settlement Agreement with the Court. Settlement Agreement, ECF No. 55-1. Under the terms of the Agreement, Defendant agrees to waive all March-September 2020 Manual SSI Overpayments without requiring any individual to submit a separate request for waiver[1] and agrees to provide such relief no later than 18 months after the time to file or notice any appeal from this Court's Final Approval Order expires or the date of final affirmance of this Final Approval Order in any appeals therefrom, whichever is later. To the extent an individual already repaid all or part of a waived Overpayment to the Agency, the amount repaid will be deemed an underpayment. Id. ¶¶ 2(a), (b).

Under the Settlement Agreement, the Parties also agree to class certification under Fed. R. Civ. P. 23(b)(2) or 23(b)(3) of a class that includes all individuals (i) with a March-September 2020 Manual SSI Overpayment; (ii) with an SSI Overpayment debt incurred between March 2020 and September 2020 identified through automated processes; or (iii) with an SSI overpayment debt incurred between October 2020 and April 2023. Id. ¶ 5(a). Defendant agrees to waive all Manual SSI Overpayment incurred by Class Members between

---

[1] Defendant does not waive March-September 2020 Manual SSI Overpayments (i) resulting from fraud or similar fault or involving misuse of benefits by a representative payee; (ii) where the overpayment determination has been reversed; or (iii) where such Overpayments were already waived. Settlement Agreement, ECF No. 55-1 ¶ 11 n.5.

March and September 2020 without requiring that these Class Members take specific actions to benefit from the waiver. Id. ¶ 2(a). The SSA will issue any amounts it previously "recouped" from beneficiaries where permitted by law, regulation and Agency policy.

Settlement Agreement ¶ 2(b). All Class Members who were assessed an SSI Overpayment incurred between October 2020 and April 2023 (the end of the COVID-19 national emergency) and all Class Members who were assessed an SSI Overpayment incurred from March 2020 to September 2020 and identified through automated processes (as opposed to manually processed overpayments) will receive relief in the form of new administrative guidance followed by a notice to be sent to each Class Member. Id. ¶ 3.

The Parties agree "that it is in the best interests of the Class Members to seek final Court approval for [the Agreement] pursuant to Fed. R. Civ. P. 23 without prior notice to the Class Members." Id. ¶ 5(e).

## III.   DISCUSSION

### A.  Class Certification

The Parties ask that this Court grant class certification on the basis that the settlement class satisfies the requirements of Rule 23.

### 1.  Legal Standard

Under Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." Denney v. Deutsche Bank AG, 443 F.3d 253, 270 (2d Cir. 2006).

Under Rule 23(a), the party seeking certification must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or

fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are <u>in fact</u> sufficiently numerous parties, common questions of law or fact, etc."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011) (emphasis in original).

In addition to meeting Rule 23(a)'s requirement, a party seeking class certification must show that the class action falls under one of the types of actions enumerated in Rule 23(b). <u>See</u> <u>Amchen Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (1997).

### 2.  Analysis

#### a.  Rule 23(a) Requirements

##### i.  Numerosity

Under Rule 23(a)(1), the party seeking certification must demonstrate that the class is so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1). "Numerosity is presumed when a class consists of forty members or more."  <u>Stinson v. City of New York</u>, 282 F.R.D. 360, 369 (S.D.N.Y. 2012) (citing <u>In re NYSE Specialists Sec. Litig.</u>, 260 F.R.D. 55, 70 (S.D.N.Y. 2009).  In this case, the Parties estimate that the certified class would include around 2.35 million members.  Memorandum, ECF No. 54 at 39.  Plaintiffs satisfy the numerosity requirement.

##### ii.  Commonality

In addressing the commonality requirement of Rule 23(a)(2), the U.S. Supreme Court found that class members cannot merely "have all suffered a violation of the same provision of law."  <u>Dukes</u>, 564 U.S. at 350.  Instead, class members' claims must "depend upon a

common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.

Named Plaintiffs contend that "[c]ommon questions of law and fact have been central to the litigation of this case: e.g., whether the IFR's limitations are arbitrary and capricious, and whether the overpayment notice sent by the Agency provided sufficient information for putative class members to understand their rights."  ECF No. 54 at 39.  This Court agrees. The class members' contentions are not only based upon concerns about the same regulation but address the common question of the IFR's alleged arbitrariness and capriciousness.

### iii.  Typicality

"[T]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove the defendant's liability."  Stinson, 282 F.R.D. at 370 (internal citations omitted).  In addition, "named plaintiffs satisfy the typicality requirement when all members of the class would benefit from the named plaintiffs' action."  Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York, 201 F.R.D. 326, 332 (S.D.N.Y. 2001).

Named Plaintiffs' claims and those of Class Members all arise from their SSI Overpayments and the SSA's assessment of the Overpayments sometime between March 2020 and April 2023.  Therefore, Named Plaintiffs' claims can be described as typical of the proposed class and satisfy the typicality requirement.

### iv.  Adequacy Of Representation

The representative parties must "fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a)(4).  "There are two inquiries as to the 'adequacy' prong, namely, adequacy of Plaintiff and adequacy of class counsel to represent the class."  D'Angelo v. Hunter Business School, Inc., No. 21 Civ. 03334 (JMW), 2023 WL 4838156, at *3 (E.D.N.Y. July 28, 2023).  Applying the first prong, the Second Circuit determined that "[a]dequate representation of a particular claim is established mainly by showing an alignment of interests between class members[.]"  Wal-Mart Stores, 396 F.3d at 106-07.  As to the second prong, the question is whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  D'Angelo, 2023 WL 4838156, at *3 (citing Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007)).

Named Plaintiffs challenge the same conduct by the SSA and seek the same relief as the putative Class Members.  Named Plaintiffs are or were all SSI recipients and their interests are aligned with those of the Class Members.  This Court finds that the first prong of the adequacy component is satisfied.

NYLAG and Justice in Aging have extensive experience representing otherwise under-represented parties who are beneficiaries of governmental income-support programs.  ECF No. 54 at 45.  Named Plaintiffs contend that "[Arnold & Porter] has extensive experience in class-action cases, and has previously served as co-counsel with NYLAG and Justice in Aging in a case against the SSA on behalf of SSI recipients."  Id. at 41.  Named Plaintiffs seek to appoint the NYLAG, Justice in Aging, and Arnold & Porter as Class Counsel.  Id. at 3.  Plaintiffs' counsel here brought litigation and benefit-related experience to the case on behalf of the Class.  This Court finds that the second prong of the adequacy component is satisfied and concludes that the Parties sufficiently met their burden of proof regarding the adequacy requirement of Rule 23(a)(4).

### b. Rule 23(b)(2) Requirement

A party seeking class certification must also show that the class action falls under one of the types of actions enumerated in Rule 23(b).  See e.g., Amchen Prods., 521 U.S. at 614.  The Parties contend that their class action falls under Rule 23(b)(2).  ECF No. 54 at 42.

Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "The key to [Rule 23(b)(2)] is the indivisible nature of the . . . declaratory remedy warranted—the notion that the conduct is such that it can be . . . declared unlawful only as to all of the class members or as to none of them.  In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."  Dukes, 564 U.S. at 360 (internal citations omitted).

The Parties state that this Court's final approval of the Settlement Agreement and the related relief the Parties seek would provide relief to all Class Members.  All Class Members are current or former SSI recipients who were assessed overpayments incurred for any month(s) from March 2020 through April 2023, and all Class Members challenge the same Rule and its impact on Class Members' financial situations.  Final approval of the Settlement Agreement would provide relief to all and each Class Member.  Thus, certification of the proposed settlement class under Rule 23(b)(2) is appropriate.

The Court certifies the proposed class as (i) all individuals with a March-September 2020 Manual SSI Overpayment; and (ii) all individuals with an SSI Overpayment debt incurred for any months between March 2020 and September 2020 that was identified through automated processes; and (iii) all individuals with an SSI Overpayment debt incurred for any

months between October 2020 and April 2023.

### B. Settlement Agreement

The Parties ask that this Court approve their proposed Settlement Agreement.  A court may approve a class action settlement agreement "on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); see Stinson v. City of New York, 256 F. Supp. 3d 283, 288 (S.D.N.Y. 2017) (quoting Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 247 (2d Cir. 2007)).  In determining a settlement agreement's fairness, district courts examine (1) procedural fairness (the "negotiating process leading up to the settlement") and (2) substantive fairness ("the settlement's substantive terms"). McReynolds v. Richards-Cantave, 588 F.3d 790, 803-04 (2d Cir. 2009) (citing D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)).

### 1. Procedural Fairness

"A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'"  D'Amato, 236 F.3d at 85 (citing Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982)).

The Parties' settlement negotiations spanned more than a year and a half.  ECF No. 54 at 9.  The Parties appeared for their first settlement conference before this Court on April 4, 2022, during which the Parties agreed to continue settlement discussions.  See Joint Motion for Hearing, ECF No. 19; Status Report Order, ECF No. 29.  Plaintiffs' Counsel attended "numerous settlement conferences before the Court," exchanged "dozens of drafts of proposals, stipulations, settlement language, and related questions; and [attended] over a dozen telephone conferences."

ECF No. 54 at 10.  Considering the duration of these settlement negotiations and the Parties'

respective participation, and in light of the Court's familiarity with the progress of this case, the

Court finds that settlement negotiations were conducted at arm's-length and that Named

Plaintiffs' counsel acted with sufficient experience, engaging in appropriate discovery to

represent Class Members' interest.

### 2.  Substantial Fairness

In determining a settlement agreement's substantial fairness, Second Circuit courts have

consistently applied the Grinnell factors.[2]  See City of Detroit v. Grinnell, 495 F.2d 448, 463 (2d

Cir. 1974); Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also Charron v.

Wiener, 731 F.3d 241, 247 (2d Cir. 2013); In re Named Direct Purchaser, 462 F. Supp. 3d. 307,

311 (S.D.N.Y. 2020).  "A court need not find that every factor militates in favor of a finding of

fairness; rather, a court considers the totality of these factors in light of the particular

circumstances."  Padro v. Astrue, No. 11 Civ. 1788 (CBA) (RLM), 2013 WL 5719076, at *4

(E.D.N.Y. Oct. 18, 2013) (citing In re Merrill Lynch Tyco Research Sec. Litig., 249 F.R.D. 124,

134 (S.D.N.Y. 2008)).

The Parties contend that the Court should specifically look at the following Grinnell

factors: "the complexity, expense, and likely duration of the litigation (factor 1); the risks of

establishing liability (factor 4); the risks of establishing entitlement to relief (factor 5); the risks

---

[2] Grinnell established the nine following factors to be considered in evaluating whether to
approve a class action settlement: (i) the complexity, expense and likely duration of the
litigation; (ii) the reaction of the class to the settlement; (iii) the stage of the proceedings and the
amount of discovery completed; (iv) the risks of establishing liability; (v) the risks of
establishing damages; (vi) the risks of maintaining the class action through the trial; (vii) the
ability of the defendants to withstand a greater judgment; (viii) the range of reasonableness of the
settlement fund in light of the best possible recovery; and (ix) the range of reasonableness of the
settlement fund to a possible recovery in light of all the attendant risks of litigation.  See
Grinnell, 495 F.2d at 463.

of maintaining the class action through the trial (factor 6); the ability of the defendants to withstand a greater judgment (factor 7); the range of reasonableness of the settlement in light of the best possible recovery (factor 8); and the range of reasonableness of the settlement as compared to a possible recovery in light of all the attendant risks of litigation (factor 9)."[3]  ECF No. 54 at 18.

### i. Complexity, Expense And Likely Duration Of The Litigation (Factor 1)

"[M]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."  Padro, 2013 WL 5719076, at *5 (internal citations omitted).  Thus, settlement is favored where it "results in substantial and tangible present recovery, without the attendant risk and delay of trial."  Sykes v. Mel S. Harris & Assocs. LLC, No. 09 Civ. 8486 (DC), 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016).

The Court agrees with the Parties' assessment that continuing litigation here may require additional briefing, document discovery, depositions, then class certification and summary judgment briefing.  ECF No. 54 at 19.  Delaying settlement would expose Class Members to continuing to be subject to their assessed Manual SSI Overpayments, whereas the Settlement Agreement would end Class Members' current difficulty, resulting in "substantial and tangible present recovery."  Id.  The Court finds that this factor weighs in favor of the Settlement Agreement.

---

[3] The Parties suggest that factors 2 and 3 are not relevant to the analysis of this Settlement.  ECF No. 54 at 18.  The Court agrees and does not consider these factors.

ii.    **Risks Of Establishing Liability, Entitlement To Relief And Maintaining The Class Action Through The Trial (Factors 4, 5, 6)**

Grinnell factors 4 through 6 are often considered together.  See Padro, 2013 WL 5719076, at *6 ("[E]ach of these factors concern the risks inherent in proceeding with this action."); see also Edwards v. Mid-Hudson Valley Federal Credit Union, No. 22 Civ. 00562-(TJM) (CFH), 2023 WL 5806409, at *8 (N.D.N.Y. Sep. 7, 2023) ("[T]he fourth, fifth, and sixth factors . . . are often considered together.").  In considering factors 4 through 6, "the Court is not required to decide the merits of the case, resolve unsettled legal questions, or to foresee with absolute certainty the outcome of the case.  Rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." Edwards, 2023 WL 5806409, at *8 (internal citations omitted).

Upon reviewing the Parties' Settlement Agreement, the Court finds that the Agreement's terms provide certain and near complete relief to Class Members.  This relief outweighs "the risks and uncertainties inherent in pursuing the action through class certification, summary judgment, trial, and appeal."  Id.  As stated above, continuing litigation would only maintain Class Members in a prejudicial financial situation and elevate the litigation costs for the Parties.  In addition, a favorable outcome for Plaintiffs at the conclusion of a fully litigated case would be far from a certainty.  Given the deference afforded to agency conduct, the standard that Plaintiffs would have to meet to prove the agency conduct undertaken in the heat of an unexpected and unprecedented global pandemic, and the extreme pressure under which the SSA acted in the COVID-19 pandemic, the SSA procedures might very well survive any judicial scrutiny proposed by Plaintiffs.  As such, the Court finds that the significant risk and expense, as well as the possible delay before a

resolution of Plaintiffs' continuing this litigation favor approval of the Agreement.

### iii. Ability Of The Defendants To Withstand A Greater Judgment (Factor 7)

Factor 7 "stands for the proposition that if a defendant could not withstand a greater judgment than what is provided for in the settlement, then the settlement is more likely to be reasonable, fair, and adequate." In re Grana y Montero S.A.A. Secs. Litig., No. 17 Civ. 01105 (LDH) (ST), 2021 WL 4173684, at *14 (E.D.N.Y. Aug. 13, 2021). Yet, "[e]ven assuming that [the Settlement Agreement] could withstand a greater judgment, 'this factor, standing alone, does not suggest that the settlement is unfair.'" Edwards, 2023 WL 5806409, at *8 (citing D'Amato, 236 F.3d at 86). Here, this factor is "at best, neutral," id., although it more likely weighs against settlement because the United States would be well able to withstand a greater judgment. Nonetheless, all Parties, including the SSA, benefit from conducting the resolution in an orderly fashion and pursuing the tailor-made administration of policy changes included in the Agreement rather than under a court-fashioned judgment that could result if Plaintiffs succeeded. The Court finds that this factor does not outweigh the fairness of the Settlement Agreement.

### iv. Range Of Reasonableness (Factors 8 And 9)

The Court considers the range of reasonableness of the Settlement Agreement in light of the best possible recovery (factor 8) and the range of reasonableness of the settlement as compared to a possible recovery in light of all the attendant risks of litigation (factor 9). Courts tend to consider factors 8 and 9 together. See Edwards, 2023 WL 5806409, at *9; see also In re Global Crossing Secs. & ERISA Litig., 225 F.R.D. 436, 460 (S.D.N.Y. 2004)).

In reviewing these two factors, courts "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in

determining whether the proposed settlement is reasonable." Grinnell, 495 F.2d at 462.

"Settlements have been approved as reasonable where the settlement provides a 'meaningful benefit' to the class." In re PPDAI Group Inc. Sec. Litig., No. 18 Civ. 6716 (TAM), 2022 WL 198491, at *12 (E.D.N.Y. Jan 21, 2022) (citing Burns v. FalconStor Software, Inc., No. 10 Civ. 4572 (ERK) (CPL), 2014 WL 12917621, at *5 (E.D.N.Y. Apr. 11, 2014)).  To evaluate whether a proposed settlement provides a meaningful benefit to class members, Second Circuit courts tend to consider the settlement's terms against "the substantial obstacles to proving critical elements of plaintiffs' claims with respect to liability and damages." In re MetLife Demut. Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010); see Karic v. Major Auto. Cos., Inc., 09 Civ. 5708 (CLP), 2016 WL 1745037, at *7 (E.D.N.Y. Apr. 27, 2016).

The Court agrees with Named Plaintiffs that the Settlement Agreement "provides the Class extremely valuable relief." ECF No. 54 at 23.  The terms of the Agreement are meaningful to Class Members because they offer relief to each Member whereas, as noted above, a favorable outcome for Plaintiffs at the conclusion of a fully litigated case would be far from a certainty.  Further, as there is no direct settlement amount involved in this case, the Court need not look at the monetary reasonableness of the Settlement Agreement. Nonetheless, the Court observes that the Agreement provides a monetary benefit indirectly to many Class Members.  By waiving all March-September 2020 Manual SSI Overpayments (with certain limited exceptions), some Class Members will be released of all obligation to reimburse and the SSA certain Class Members may receive amounts issued for monies previously "recouped."  Defendant will also provide this relief to these Class Members without requiring that they take any action.  Other Class Members will receive an individual notice with information and guidance which may enhance their ability to seek a waiver.

Overall, these provisions will enable some Class Members to improve their financial positions.  Settlement Agreement ¶¶ 2(a), (b), 3(a).  The Court finds that the Settlement Agreement provides meaningful relief to all Class Members.

### C.  Pre-approval Notice

The Parties seek final approval of the Settlement Agreement without a required Fairness Hearing or pre-approval notice to absent Class Members.  ECF No. 54 at 27.

Under Rule 23(e)(1)(A), "parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."  Fed. R. Civ. P. 23(e)(1)(A).  The traditional application of Rule 23(e) requires that absent class members receive a notice regarding a proposed settlement agreement.  See Kennedy v. Whitley, 539 F. Supp. 3d 261, 268 (D. Conn. 2021); see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113-14 (2d Cir. 2005) ("[T]he settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").  Yet, in certain situations, Second Circuit courts have adopted a "functional approach" to Rule 23(e), approving settlement agreements in class actions without requiring a hearing or a pre-approval notice to the absent class members.

### 1. Functional Approach To Rule 23(e)

#### a.  Legal Standard

"The district court has virtually complete discretion as to the manner of giving notice to class members."  Jermyn v. Best Buy Stores, L.P., No. 08 Civ. 214 (CM), 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012) (citing Handschu v. Special Svcs. Div., 787 F.2d 828, 833 (2d Cir. 1986)).  Second Circuit courts have identified several situations in which pre-approval notice is not necessary to approve a settlement agreement.  These situations include: (i) "when the terms

of the settlement provide near complete relief to the plaintiffs," Green v. American Exp. Co., 200 F.R.D. 211, 212 (S.D.N.Y. 2001); (ii) when "the rights of absent Class Members" are not "compromised in any way," Selby v. Principal Mut. Life Ins. Co., No. 98 Civ. 5283 (RLC), 2003 WL 22772330, at *4 (S.D.N.Y. Nov. 21, 2003); (iii) "when the settlement provides for only injunctive relief, and, therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class," Green, 200 F.R.D. at 212; (iv) "when there is no evidence of any collusion between the parties," id.; (v) when "[t]he significant time delay that can be involved in providing notice may also further injure putative class members waiting for the relief that they rightly deserve," In re Nazi Era Cases Against German Defendants Litig., 198 F.R.D. 429, 441 (D.N.J. 2000); and (vi) "when the cost of notice would risk eviscerating the settlement agreement." Green, 200 F.R.D. at 212.

"In other words, when Rule 23 would not serve its intended purpose of ensuring that the settlement is fair, but would, in fact, jeopardize or unnecessarily prolong the settlement, a court may forego its requirements." J.S. v. Attica Cent. Schools, No. 00 Civ 513S (WMS), 2012 WL 3062804, at *2 (W.D.N.Y. July 26, 2012).  The most important factor in determining whether pre-approval notice is "whether the rights of absent Class Members [would be] compromised in any way." Selby, 2003 WL 22772330, at *4.  Courts have allowed limited exception to the rule where class members will not be prejudiced by a compromise or dismissal without notice. Id. at *3.

### b. Analysis

The Parties argue that they fall under most situations in which Second Circuit courts have approved a proposed settlement without requiring pre-approval notice.  ECF No. 54 at 54.  This Court agrees.

### i. The Settlement Provides Complete Relief To Class Members With March-September 2020 Manual SSI Overpayments

As described above, the Settlement Agreement provides a monetary benefit to eligible Class Members with March-September 2020 Manual SSI Overpayments, except with very few exceptions.  Under the Agreement, Defendant waives claims against almost all Class Members who received a Manual SSI Overpayment sometime between March and September 2020. Settlement Agreement ¶ 2(a).  This waiver provides those Class Members with complete relief. These Plaintiffs do not waive any rights as to their SSI benefits.

### ii. The Rights Of Absent Class Members Would Not Be Compromised

"[T]he key question in determining whether notice is required is whether the rights of absent class members were compromised in any way." Jermyn, 2012 WL 2505644, at *12 (internal citation & quotations omitted).  Plaintiffs state that, under the Settlement Agreement, "every Class Member reserves all rights with respect to his or her own SSI benefits," and "Class [M]embers only release the right to bring affirmative claims arising from the systemic practices challenged in the Complaint."  ECF No. 54 at 32 (emphasis in original).  If this Court were to grant the Settlement without requiring a pre-approval notice, absent Class Members would remain in the right to request individual relief in connection with any Overpayment, including, but not limited to, relief sought through a request for waiver or reconsideration or any administrative or judicial appeal thereof, consistent with applicable laws, regulations and Agency policy.  Settlement Agreement ¶ 6(b).  Therefore, this Court finds that the rights of absent Class Members would not be compromised by the Settlement Agreement's approval.  Instead, they would receive of notice of possible relief they would not otherwise receive, likely assisting eligible Class Members to receive or request future relief.

### iii.   The Settlement Seeks Only Injunctive And Declaratory Relief

Plaintiffs do not seek monetary damages from Defendant.  Instead, they ask that this Court approve the Settlement Agreement, which would provide injunctive and declaratory relief to Class Members.  ECF No. 54 at 1.  As stated above, the Agreement would waive all March-September 2020 Manual SSI Overpayments and ensure that Class Members who were assessed an SSI Overpayment incurred from March 2020 to September 2020, and identified through automated processes receive relief in the form of new administrative guidance followed by a notice to be sent to each Class Member.  Settlement Agreement ¶¶ 2(a), 3.  The agreed-upon relief is thus above and beyond any relief Plaintiffs would individually obtain without filing individual requests.  The Settlement Agreement is thus entirely in Plaintiffs' favor.

### iv.   There Is No Evidence Of Collusion Between The Parties

The Court finds there is no evidence of collusion between the Parties.  District courts have noted a lack of collusion in the presence of "arms-length negotiations and both parties' zealous advocacy for their respective client."  Green, 200 F.R.D. at 213.  As noted above, the Parties engaged in more than a year and half of settlement negotiations at arms'-length, and both sides were represented by their respective experienced counsel.  The absence of collusion is also evidenced by the fact that Named Plaintiffs would not be in a substantially better position after the settlement than would absent Class Members.  See In re Nazi Era Cases Against German Defendants Litig., 198 F.R.D. at 444 (finding that "named Plaintiffs will not be in a substantially better position after the settlement than will absent class members, as . . . they all stand to recover the same amount").

### v. Pre-Approval Notice Would Delay Relief Under The Settlement

In In re Nazi Era Cases Against German Defendants Litig., the district court found that issuing a notice to all class members would create significant delay and cause further prejudice to putative class members "waiting for the relief that they rightly deserve." Id. at 441.  Here, too, with over 2.35 million Class Members, requiring notice would cause significant delays. Plaintiffs seek relief in relation to events that began in March 2020.  As Plaintiffs explain, sending a notice would cause some Class Members to continue "to have a portion of their benefits recouped each month to collect overpayments" that the Settlement would ultimately waive.  ECF No. 54 at 35.  The Court finds that the importance of relieving putative Class Members outweighs the significant delay a pre-approval notice would cause.

### vi. The Cost Of Notice Would Be Unnecessarily Expensive

"Rather than insist on a narrow, strict interpretation of Rule 23(e), the more enlightened approach adopted by courts avoids judicial time expenditure and relieves the parties of the expense of notice when it is appropriate, without circumventing the policies of Rule 23(e) . . . . When notice would be a fruitless yet costly gesture, Rule 23(e) should not be read to compel the parties to incur pointless expense."  In re Nazi Era Cases Against German Defendants Litig., 198 F.R.D. at 441-42 (internal citations & quotations omitted).

The Court agrees with Plaintiffs that "[t]his factor strongly weighs in support of approval" without notice.  ECF No. 54 at 36.  Plaintiffs estimate that "the cost of one stamp per Class Member would be over $1.5 million, and that does not even take into account the significant cost of printing the notice and other related charges."  Id.  Because this Court found that the previous factors weigh in favor of approving the Settlement, the significant cost of a notice would unnecessarily delay and complicate the relief to which the Parties have agreed.  See

<u>Green</u>, 200 F.R.D. at 213.  This Court finds that a preliminary notice to absent Class Members is not necessary before the Court may approve the Settlement Agreement.

### D.  Attorneys' Fees

The Settlement Agreement provides for $268,000 in attorneys' fees and $2,702 in costs to Class Counsel to satisfy Plaintiffs' claim for reasonable attorneys' fees and costs[4] under the Equal Access to Justice Act ("EAJA").  ECF No. 54 at 43; 28 U.S.C. § 2412.

### 1.  Legal Standard

The EAJA provides that "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  <u>Caplash v. Nielsen</u>, 294 F. Supp. 3d 123, 128 (W.D.N.Y. 2018) (quoting <u>Vincent v. Comm'r of Soc. Sec.</u>, 651 F.3d 299, 302-03 (2d Cir. 2011)).

In order to recover attorneys' fees under the EAJA, the application for such fees must show: "(1) that the claimant be a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement."  <u>Chadirjian v. Berryhill</u>, 17 Civ. 1476 (CBA), 2022 WL 4112203, at *2 (E.D.N.Y. Jan. 18, 2022) (citing <u>Comm'r, INS v. Jean</u>, 496 U.S. 154, 158 (1990)).  The EAJA statute also requires a showing that

---

[4] These costs comprise the filing fee, service of process, couriers, duplicating and <u>pro hac vice</u> admissions.  For the reasons stated below, the Court agrees that these costs are appropriate other than the <u>pro hac vice</u> fees.

the petitioning party has met the appropriate "net worth" requirements. 28 U.S.C. § 2412(d)(2)(B). "In order to satisfy the net worth requirement under EAJA, an individual party's net worth must not exceed $2,000,000 at the time the lawsuit was filed. If the party is a business owner, corporation, or organization, the party must establish that it did not have more than 500 employees and its net worth did not exceed $7,000,000 at the time the lawsuit was filed. 28 U.S.C. § 2412(d)(2)(B). Courts only review these standards when they are in dispute. See Santos v. Astrue, 752 F. Supp. 2d 412, 415 (S.D.N.Y. 2010); Jean, 496 U.S. at 158 (finding that "[o]nly the application of the 'substantially justified' condition is at issue").

According to Plaintiffs, "Defendant takes no position at this time on whether Plaintiffs meet the criteria for entitlement to fees pursuant to EAJA but, in order to settle this matter, Defendant has voluntarily agreed to the proposed fee award in connection with settlement." ECF No. 54 at 43. The SSA does not contest that Plaintiffs are the prevailing parties, that the SSA was not substantially justified, that Plaintiffs meet the net worth criteria and that they are entitled to attorneys' fees. The SSA does not object to the hourly rates sought by Plaintiffs under 28 U.S.C. § 2412(d)(2)(a). See Barbour v. Colvin, 993 F. Supp. 2d 284, 289 (E.D.N.Y. 2014). As the record supports these agreed-upon point, the Court will only address Plaintiffs' calculation of attorneys' fees.

### 2.   Fee Calculation

#### a.   Legal Standard

"Although the parties have reached an agreement as to the appropriate award of fees in this matter, the Court is obligated to review the fee application and determine whether the proposed fee award is reasonable." Sheron P. o/b/o S.K.C. v. Acting Comm'r of Soc. Sec., 1:21 Civ. 0445 (JJM), 2023 WL 6986240, at *1 (W.D.N.Y. Oct. 24, 2023) (approving stipulated

attorneys' fees based on the hours detailed in counsel's written declaration) (citing Lockwood v. Colvin, No. 3:15 Civ. 01026 (AWT), 2016 WL 6902341, at *1 (D. Conn. Nov. 23, 2016)). "[T]he determination of a reasonable fee under the EAJA is for the court rather than the parties by way of stipulation." Lockwood, 2016 WL 6902341, at *1 (citing Pribek v. Sec'y, Dep't of Health & Human Servs., 717 F. Supp. 73, 75 (W.D.N.Y. 1989)). To determine reasonable attorneys' fees under the EAJA, "the typical starting point is the so-called lodestar amount, that is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Healey v. Leavitt, 485 F. 3d 63, 71 (2d Cir. 2007) (internal citations & quotations omitted); see Kerin v. U.S. Postal Service, 218 F. 3d 185, 190 (2d Cir. 2000); Diaz v. Astrue, No. 3:06 Civ. 1394 (MRK)(WIG), 2007 WL 2126356, at *2 (D. Conn. June 26, 2007).

Under the EAJA, attorneys' fees "shall be based upon prevailing market rates for the kind and quality of the services furnished," but "shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). "[T]he hourly rate should correspond to the year that the work was performed." See Chadirjian, 2022 WL 4112203, at *4; Kerin v. U.S. Postal Serv., 218 F.3d 185, 194 (2d Cir. 2000). Second Circuit courts have looked at the year during which counsel performed the majority of their work to identify the appropriate EAJA rate. See Chadirjian, 2022 WL 4112203, at *4 (applying the 2017 hourly rate of $201 to calculate EAJA fees where attorneys performed most of their work in 2017). The court's responsibility is "to guarantee that the hours are not excessive, redundant, or unnecessary." Luessenhop v. Clinton Cnty., N.Y., 558 F. Supp. 2d 247, 267 (N.D.N.Y. 2008).

"The requirement that attorneys support their fee requests with contemporaneous time records is a 'hard-and-fast-rule' with only rare exceptions." Kottwitz v. Colvin, 114 F. Supp. 3d

145, 150 (S.D.N.Y. 2015) (citing Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011)).

Second Circuit courts usually require time records of the work performed to support the

application for attorneys' fees under the EAJA.  See id.; see also Kirsch v. Fleet Street Ltd., 148

F.3d 149, 173 (2d Cir. 1998); Mar Oil, S.A. v. Morrisey, 982 F.2d 830, 841 (2d Cir. 1993)

(finding that "[w]here adequate contemporaneous [time] records have not been kept, the court

should not award the full amount requested").  The Court of Appeals has stated that

contemporaneous time records should "specify, for each attorney, the date, the hours expended,

and the nature of the work done.  A recreation of time records based on documents, calendars

and other extrinsic evidences is insufficient.  Contemporaneous records of work performed is not

enough; an attorney must maintain contemporaneous records of the time expended performing

such work as well."  Kottwitz, 114 F. Supp. 3d at 150 (internal citations & quotations omitted)

(emphasis in original).  Second Circuit courts have approved a methodology that parses

attorneys' fees into categories corresponding to various phases of the case."  See Cruz v. Local

Union No. 3 of Int'l Brotherhood of Elec. Workers, 34 F.3d 1148, 1160-61 (2d Cir. 1994); see

also Lake v. Schoharie Cnty. Com'r of Soc. Servs., No. 9:01 Civ. 1284 (NAM) (DEP), 2006 WL

1891141, at *6 (N.D.N.Y. May 16, 2006) (accepting plaintiffs' time entries after careful

examination of the detailed itemized records).  "[T]he party need not show in great detail how

each minute of [counsel's] time was expended, but the court should be able to glean the general

subject matter of the time expenditure from the records.  What is critical is that there is an

adequate basis to determine the reasonableness of the claimed hours."  Luessenhop, 558 F. Supp.

2d at 267-68 (internal citations & quotations omitted).

   "A typed attorney's affidavit which sets forth all of the charges may satisfy this record

requirement."  Id. at 267; see Mastrio ex rel. Prendergast v. Sebelius, No. 3:08 Civ. 1148 (JBA),

2011 WL 5078240, at *2 (D. Conn. Oct. 26, 2011) (where the district court required that

plaintiffs file briefs and affidavits in support of their motion for attorneys' fees).  When an

affidavit is not explicit enough, the court may request contemporaneous billing records.  See id.

at 268.  The court also "has discretion . . . to apply a reasonable percentage reduction as a

practical means of trimming fat from a fee application."  Colegrove v. Barnhart, 435 F. Supp. 2d

218, 221 (W.D.N.Y. 2006) (finding that a reduction of approximately 5% in the total EAJA fees

requested was reasonable).

### b.   Analysis

#### i.   Hourly Rates

The Parties' Settlement Agreement provides for $268,000 in attorneys' fees and $2,702

in costs to Class Counsel.  See Settlement Agreement ¶ 12.  Plaintiffs calculated the amount of

attorneys' fees using the lodestar method.  See ECF No. 54 at 44.  Applying this method,

Plaintiffs multiplied Class Counsel's hourly rate of $233, "the rate provided by the [EAJA],

adjusted for cost of living via the consumer price index (CPI-U), for New York for 2022," by the

number of hours Class Counsel performed.  ECF No. 54 at 44 n.24; Supplemental Declaration of

Danielle Tarantolo ("Tarantolo Supplemental Declaration), ECF No. 57 ¶ 10.   Class Counsel

used the 2022 EAJA rate as "an appropriate average" because "the hours expended in this case

span from mid-2021 into late Spring 2023."  ECF No. 54 at 44 n.24.  According to Plaintiffs,

"[e]ven at EAJA-mandated rates, which are significantly below market, the total lodestar for

[Class Counsel's] primary timekeepers exceeds $365,000, which is nearly $100,000 more than

the stipulated fee award amount."  ECF No. 54 at 43-44.  Plaintiffs state that "at the agreed-upon

EAJA rate of $233 per hour, the total lodestar for all hours [performed by NYLAG] would be

$487,413."  Tarantolo Supplemental Declaration ¶ 11.  "[T]he $268,000 stipulated award

represents 55% of the total lodestar, calculated at EAJA rates, for all [NYLAG hours]." Id. ¶ 12. As for Arnold & Porter attorneys, Plaintiffs claim that they performed a total of approximately 1,750 hours. "At EAJA mandated rates, the total lodestar for these primary timekeepers is approximately $407,000. For reference, the $268,000 stipulated award represents 66% of that amount." Id. ¶ 14.

Having reviewed Class Counsel's declarations and timesheets, this Court finds that the hourly rate of $233 is reasonable in New York for an attorney with "qualifications and experience and the sophistication required to successfully litigate this class action." A.R. v. Connecticut State Board of Ed., No. 3:16 Civ. 1197 (CSH), 2023 WL 5444549, at *5 (D. Conn. Aug. 24, 2023); see Tarantolo Supplemental Declaration, Exh. C. Class Counsel did not provide detailed summaries of each attorney's qualifications and expertise in Social Security cases, but their declarations reflect the relatively high level of seniority of the attorneys who performed most of the work in this litigation. Tarantolo Supplemental Declaration, Exh. C. The Court finds that the EAJA hourly rate of $233 is reasonable for supervising attorneys, partners and associates in New York. See id.

### ii. Number Of Hours Performed

Plaintiffs identify "ten primary timekeepers in this action, who performed the most intensive work."[5] ECF No. 54 at 43. Plaintiffs claim that the ten primary timekeepers performed a total of approximately 1,750 hours of work in this action, of which 1,284 hours

---

[5] Based on Plaintiffs' Counsel's declarations, the attorneys by seniority/title who performed most of the work in this matter are: (1) NYLAG's Director (317.55 hours), Supervising Attorneys (183.75 and 100.8 hours) and Project Director (110.13 hours); (2) Justice in Aging's Litigation Director (190.1 hours) and Director (104.2 hours); and (3) Arnold & Porter's Partners (311.3 and 103 hours) and Associates (256.2 and 126.8 hours). See Tarantolo Supplemental Declaration, Exh. C.

were performed throughout the five main stages of litigation.[6]  Tarantolo Supplemental

Declaration ¶¶ 14, 18.  The primary activities in this litigation were negotiation, reviewing

voluntarily exchanged discovery materials, team meetings and drafting with a focus on the

technical segments of the SSA's internal and notice procedures.  Id. at Exhs. A, B;

Supplemental Declaration of Carmela T. Romeo ("Romeo Supplemental Declaration"), ECF.

Nos. 59, 60.  "The additional work performed by Class Counsel since May 17, 2023

comprises a sixth stage of finalizing settlement and submission of approval papers ranging

from 5/17/23-10/27/23."  Tarantolo Supplemental Declaration ¶ 19.  Although the ten

timekeepers performed a total of 191 hours in this sixth stage, Class Counsel only counted the

workhours of the top two timekeepers from each organization, thus lowering the total number

to 168 hours.  Id.

   Although most of the work in this case was performed by ten timekeepers, the Court

notes that 26 timekeepers (attorneys and non-attorneys) were involved on Plaintiffs' side in

this litigation.  See Tarantolo Supplemental Declaration, Exh. C.  On its own, Arnold & Porter

involved six associates who, together, performed 540.2 hours of work.  Id.  Having reviewed

Class Counsel's declarations, as well as the redacted and unredacted detailed timesheets it

received from Plaintiffs' counsel, Tarantolo Supplemental Declaration, Exh. C.  ECF Nos. 57,

60, 61, the Court believes that this litigation did not justify 1,750 hours of attorney work or

the total number of hours by staff that Counsel state participated but for whom compensation

is not requested.  Staffing with 26 timekeepers seems an exceptionally high level of staffing to

---

[6] Class Class describes these five stages as follows: "(1) initial investigation (4/5/21-5/27/21); (2)
complaint drafting (5/28/21-9/15/21); (3) preliminary injunction briefing (9/16/21-3/28/22); (4)
initial settlement negotiation leading up to the agreement in principle on the March-September
2020 manual overpayments (3/29/22-9/27/22); and (5) continued settlement negotiation
(9/28/22-5/16/23)."  Tarantolo Supplemental Declaration ¶ 16.

the Court.  In addition, the timesheets included non-compensable work such as media preparation, which should be excluded.

Yet, in light of Class Counsel's considerably reduced request for hours to be compensated (reducing fee application by approximately 600 hours or more than $100,000), and for the compensable work described in the timesheets, the Court finds the attorneys' fees request to be reasonable and approves Plaintiffs' $268,000 stipulated attorneys' fees.

### iii.  Additional Costs

Class Counsel also requests $2,702 in costs, which covers the filing fee, service of process, couriers, duplicating, and pro hac vice admissions.  ECF No. 54 at 45 n.26; Tarantolo Declaration ¶ 22.  As noted above, the Court agrees that these costs are reasonable other than Justice in Aging attorneys' pro hac vice fees.  Attorneys are responsible for the costs of their own admissibility before the Court such that it is unreasonable to ask Defendant to pay these fees.  The $500 of pro hac vice admission fees are not approved but the remaining $2,202 in costs is approved.

## IV.    CONCLUSION

After carefully reviewing the entire record in this matter, the Parties' submissions, Settlement Agreement and the applicable law, and for the reasons set forth herein, the Court hereby enters the separately posted Order of Approval.

**SO ORDERED.**

Dated: November 20, 2023
        Brooklyn, New York

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge